(No. 34825.—

PAULINE LUX *et al.*, Appellants, *vs.* FRANK LELIJA *et al.*, Appellees.

*Opinion filed September 18, 1958.*

RICHARD A. MOHAN, of Streator, for appellants.

BERRY & O'CONOR, of Streator, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The plaintiffs, Pauline Lux, Margaret Tkach, and Andrew Lelija, instituted this action in the circuit court of La Salle County against Frank Lelija, individually and as administrator of the estate of Anna Lelija, deceased, and Mary Morse, to set aside deeds to certain real estate and for partition of the said real estate. This appeal is from the decree granting partition but refusing to set aside the deeds.

The property which is the subject of this controversy is lots 9, 11, 14, and 15 of block 20 in Painter's Addition to Streator. Lot 9 is improved with a home and the other three lots are unimproved. The plaintiffs and defendants are brothers and sisters whose parents owned this property during their lifetime. The father of the parties died in 1949 and the mother died on February 10, 1954. The property descended to the parties as intestate property.

A short time after the mother's death the plaintiffs, Mary Morse, and their respective spouses, conveyed their interests in lot 9 by a quitclaim deed to Frank. About the same time a second quitclaim deed was signed by all the parties and their respective spouses, other than Andrew and his wife, conveying their interests in lots 11, 14, and 15 to Andrew with this provision in the deed:

"In trust, the said Andrew Lilija being empowered by above grantors to sell the above lots and then to distribute the proceeds in equal shares to Grantors and grantee, namely, to Mary Morse ¼ share; to Pauline Lux, ¼ share; to Margaret Tkach, ¼ share, and to Andrew Lilija, ¼ share. No share to Frank Lilija in consideration of his being granted the home place."

A few months later the plaintiffs filed a complaint alleging that Frank holds title to lot 9 as constructive trustee for the benefit of all the parties because the conveyance from them and Mary Morse to Frank was obtained by both actual and constructive fraud. They prayed that both quitclaim deeds be set aside and for partition of all the property. The defendants filed an answer after they had been defaulted, but the answer was stricken on plaintiffs' motion that it had been filed without leave of court. The circuit court later, on motion of defendants supported by an affidavit, vacated its decrees of partition and sale. The plaintiffs appealed from that order. The Appellate Court, Second District, upheld the order (*Lux* v. *Lelija,* 11 Ill. App. 2d 333) and we denied plaintiffs' petition for leave to appeal from that judgment. The case was returned to the circuit court and tried on the merits. That court decreed Frank to be the sole owner of lot 9, Andrew to be the owner of lots 11, 14 and 15, ⅕ individually and ⅘ as trustee, and partition of lots 11, 14 and 15.

The plaintiffs contend that the trial court erred in not holding that Frank holds title to lot 9 as a constructive trustee. Constructive trusts are divided into two classes: one, where there is a fiduciary or confidential relationship and the subsequent abuse of that confidence; and the other, where actual fraud is a basis for raising a constructive trust. (*Kapraun* v. *Kapraun,* 12 Ill.2d 348.) Plaintiffs base their case on both classes of constructive trust.

The plaintiffs argue that the trial court's finding that there was no actual fraud proved is against the manifest weight of the evidence. All the parties testified that a few

days after their mother's funeral the parties decided to go to Marion Ramza, an attorney, to have their mother's estate settled. The evidence as to what happened thereafter is conflicting on almost every point.

The plaintiffs testified that while they were at Ramza's office Mary Morse, one of the defendants, proposed that Frank get the house, but that they felt he should purchase the interests of the other children. They further testified that Frank was to act as court-appointed administrator of the estate, that Frank was to be "administrator" of the house and Andrew "administrator" of the three unimproved lots and that they signed papers at Ramza's office which they thought had this effect. They stated Frank later contacted them and had them sign a paper which had printing on it but no typing and which he represented as just another paper to make him administrator. They claim a conveyance to Frank was never agreed upon nor intended.

Mary Morse, one of the defendants, testified that while all the parties were at Ramza's office she told them that she thought Frank should get the house because their mother, the day before she died, had expressed her wish that Frank get the house and furniture. Mary Morse felt that the children should carry out their mother's wishes. She testified that after some discussion the children conceded that Frank should have the house.

Attorney Ramza's testimony corroborated that of Mary Morse. He further testified that he fully explained to the parties at three different times the following: the insurance money was to be collected and used to pay the funeral expenses and whatever incidental expenses there were, and $2,000 was to be collected from Peoples' Building and Loan and divided among the children. The house was to be deeded to Frank, and in exchange for his receiving the home place and the furnishings he would deed all of his interest in the three lots to the other children. He said all

the parties answered affirmatively when he asked them if this was what they wanted to do.

Ramza stated that Pauline, Margaret, Andrew, and Mary then agreed that the three lots should be sold and the proceeds distributed equally among themselves. Ramza advised them that it would be advisable to put the title to the three lots in one of their names so that they would not get tied up with another administration if one of the four died. Ramza testified that the four agreed to put the title in Andrew.

Since his secretary was not present at this meeting, Ramza said he prepared the quitclaim deeds the next day to carry out what the parties had agreed upon. He stated that the printed forms of deeds were typed before he gave them to Frank to be executed.

Mary Morse testified that the papers Frank brought to her and her husband for their signatures were the quitclaim deeds, that they were completely filled in, and that Frank made no representation that they were just papers to make him administrator.

Frank Lelija's testimony regarding the deeds was the same in substance as that of Mary Morse and attorney Ramza. He denied that he made any representation that the deeds he took to the plaintiffs for their signature were merely papers to make him administrator.

Since the evidence on the question of actual fraud was conflicting, the question was one of fact for the court as the trier of facts in this case. (*McRoberts* v. *Combination Fountain Co.* 317 Ill. 165.) We are of the opinion that there was abundant evidence to support the court's finding that there was no actual fraud proved in this case.

This brings us to the question of whether the trial court erred in holding no fiduciary relationship existed between Frank and his brother and sisters at the time these deeds were executed. The plaintiffs contend there was

546

such a relationship because the parties had agreed that he "administer" lot 9 and act as the court-appointed administrator of the personal estate of their mother. This alone certainly did not create a fiduciary relationship as a matter of law. The relationship may, however, have been moral, social, domestic or even personal; but where the relationship does not exist as a matter of law the burden of proof is on the one seeking to establish the relationship to prove its existence by proof so clear, convincing, strong, unequivocal and unmistakable as to lead to but one conclusion. *Kapraun* v. *Kapraun,* 12 Ill.2d 348.

We have said that some factors to be taken into consideration in determining whether a fiduciary or confidential relationship existed between the parties are the degree of kinship, the disparity in age, health and mental condition, the relative education and business experience of the parties, and the like. (*Kester* v. *Crilly,* 405 Ill. 425; *Stephenson* v. *Kulichek,* 410 Ill. 139.) Of these factors only the degree of kinship was revealed by the evidence. All of the parties are familiar with the property involved and appear from the record to be perfectly capable of handling their own business affairs. There is no evidence to show Frank occupied a dominant position or that he exerted any influence on the others. The finding of the trial court that no fiduciary relationship was proved is not against the manifest weight of the evidence.

Plaintiffs contend that there was no consideration for their quitclaim deed to Frank. This contention is based on the fact that Pauline Lux and Margaret Tkach had a one-fifth interest in the three lots before the execution of the deed and that they now have but a one-fifth interest in these lots. The trial court, in paragraph 3 of the decretal part of its decree, ordered: "That a division and partition of Lots Eleven (11); Fourteen (14) and Fifteen (15) be made allowing one-fifth interest to Andrew Lelija individually and four-fifths to Andrew Lelija as Trustee for

the equal benefit of Andrew Lelija, Pauline Lux, Mary Morse and Margaret Tkach."

The plaintiffs' complaint did not pray specifically for reformation but it did contain the general prayer for such other relief as is deemed equitable. From the evidence presented and under the circumstances of this case, we feel that the trial court should have reformed the quitclaim deed naming Andrew Lelija as grantee in trust. The plaintiffs' testimony is to the effect that the three lots were to be sold and the proceeds divided equally among the five children. The defendants' and attorney Ramza's testimony is to the effect that the parties intended by this deed to put title in Andrew as trustee to avoid complications in the event Pauline, Margaret, or Mary died before the lots were sold, to divest Frank of his interest in the lots, and to have the proceeds distributed equally among Pauline, Margaret, Mary, and Andrew. Thus, the testimony reveals that all the parties understood that the proceeds from these lots were to be distributed equally, the only dispute being whether Frank was to be one of the distributees.

To accomplish the parties' evident intent, the whole interest in the three lots should have been placed in trust with each of the four beneficiaries to receive one fourth of the proceeds from the sale; or four-fifths interest should have been placed in trust with three beneficiaries to receive five sixteenths and the trustee to receive one sixteenth of the proceeds held in trust. However, four-fifths interests was put in trust with the four beneficiaries each having an equal interest in the trust. This gave Andrew an interest larger than one fourth of the whole which was not the intent of the parties.

It is well established that courts of chancery will reform a written instrument where there is a mutual mistake of fact, and make the instrument conform with the parties intent. (*Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19.) An erroneous mathematical computation is a mistake of

fact such as will justify reformation of a written instrument. *Dunn* v. *O'Mara*, 70 Ill. App. 609.

The trial court's decree must be amended so that the in-trust provision of the deed to the three lots is reformed to read:

"In trust, the said Andrew Lelija being empowered by the above grantors to sell the above lots and then to distribute the proceeds in shares to grantors and grantee, namely, to Mary Morse, 5/16th share; to Pauline Lux 5/16ths share; to Margaret Tkach, 5/16ths share and to Andrew Lelija, 1/16th share."

Paragraph 3 of the decretal portion of the decree must also be amended to provide for the parties' interests in accord with the trust deed as reformed. Hence, the plaintiffs' argument that there was no consideration for the deed to Frank is not supported by the evidence.

Plaintiffs ask that, if we do not establish a constructive trust, we consider their brief and argument as a petition for relief from the decree of the trial court which set aside its order defaulting the defendant Frank Lelija. They cite sections 72 and 76 of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, pars. 72 and 76) as authority for this court to grant such relief. Section 72 authorizes relief from orders, judgments and decrees only on a petition filed in the court where the order was entered. Since we have original jurisdiction only in cases relating to revenue, *mandamus* and *habeas corpus* (Ill. Const. 1870, art. VI, sec. 2) we are without jurisdiction to consider the plaintiffs' brief and argument as a petition under section 72 of the Civil Practice Act. Nor does this court have jurisdiction under section 76 of the Civil Practice Act to grant a petition for leave to appeal 2½ years after the entry of the decree appealed from.

That part of the decree finding that plaintiffs had not proved actual fraud, the existence of a fiduciary relationship, or lack of consideration is affirmed. The decree, however, failed to reform the trust deed to conform to the clear intent of the parties. The decree of the circuit court of

La Salle County is therefore affirmed in part and reversed in part, and the cause is remanded to that court with direction to enter a decree in accordance with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*