(No. 66167.—

NORMAN L. SUTTLES *et al.*, Appellees, v. PETER J. VOGEL *et al.*, Appellants.

*Opinion filed December 21, 1988.*

MILLER, J., took no part.
STAMOS, J., dissenting.

Long, Rabin & Young, Ltd., of Springfield (Duane D. Young and Paul J. Bargiel, of counsel), for appellants.

Steven Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellees Norman L. Suttles and Lula Mae Suttles.

James R. Morrison, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees Leo F. Carroll and Flynn & Flynn.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Norman and Lula Mae Suttles (Suttles) brought a cross-action in the circuit court of Greene County seeking to impose a constructive trust upon 426 acres of farmland owned by Peter and Gerda Vogel (Vogels). The circuit court entered a default judgment against the Vogels as a sanction for failing to comply with discovery rules and denied their motion to vacate the default judgment. The Vogels appealed.

On appeal, the appellate court affirmed, finding: (1) the Suttles' amended counterclaim stated a cause of action for constructive trust; (2) the circuit court's entry of default judgment as a discovery sanction against the

Vogels and its subsequent refusal to vacate such judgment were within the circuit court's discretion; and (3) the doctrines of *res judicata* and collateral estoppel were inapplicable in the present action. (160 Ill. App. 3d 464.) This court granted the Vogels' petition for leave to appeal (107 Ill. 2d R. 315).

The issues presented for review are: (1) whether the Suttles' amended counterclaim states a cause of action for constructive trust; (2) if so, whether the circuit court's entry of default judgment as a discovery sanction against the Vogels and its subsequent refusal to vacate such judgment constitute an abuse of discretion; and (3) whether the doctrines of *res judicata* or collateral estoppel bar the present action.

This case derives from the outcome of a previous forcible entry and detainer action brought by the Vogels against the Suttles (Ill. Rev. Stat. 1981, ch. 110, par. 9—102), which was decided by this court in *Vogel v. Dawdy* (1985), 107 Ill. 2d 68 (*Vogel I*). We summarize the facts in *Vogel I* as they pertain to this action.

## I. *VOGEL I*—PRIOR FORCIBLE ENTRY AND DETAINER ACTION

On March 14, 1979, the Vogels entered into a contract to sell 811 acres of farmland to Jim and Carolyn Dawdy. The Vogels' contract with the Dawdys contained nonassignability, insurance maintenance and tax assumption clauses. The contract provided that a breach of any provision would be considered a default, warranting forfeiture. Two days later, on March 16, 1979, the Dawdys entered into a contract to sell 426 of the 811 acres to the Suttles. (The Dawdys also contracted to sell the remaining 385 acres to Norwood and Barbara Ashley.) The Vogels later learned of the Dawdys' division and sale of the 811 acres and demanded that the Dawdys cure the breaches.

The Dawdys failed to remedy the breaches, and on June 11, 1980, the Vogels filed suit against the Suttles, among others, in the circuit court of Greene County pursuant to the forcible entry and detainer statute (Ill. Rev. Stat. 1981, ch. 110, par. 9—102), seeking possession of the entire 811 acres of land.

After a bench trial, judgment was entered June 28, 1983, granting the Vogels possession of the 426 acres of farmland held by the Suttles. The Suttles appealed the circuit court's decision, which was affirmed by both the appellate court (*Vogel v. Dawdy* (1984), 123 Ill. App. 3d 356) and this court (*Vogel v. Dawdy* (1985), 107 Ill. 2d 68).

## II. SUTTLES v. VOGEL—PRESENT CONSTRUCTIVE TRUST ACTION

On March 31, 1983, the State Bank of Jerseyville filed suit to foreclose a mortgage, executed by the Vogels, on the 811 acres of farmland. The Bank's suit named the Vogels and the Suttles, among others, as defendants. On May 5, 1983, after the forcible entry and detainer action in *Vogel I* was filed, but before final judgment was entered in that case, the Suttles answered and filed three counterclaims, including one against the Vogels, and a third-party complaint against their former attorneys, including Leo Carroll.

On July 22, 1983, the State Bank of Jerseyville moved to dismiss the foreclosure suit, because the Vogels cured the default. On September 14, 1983, the circuit court dismissed the foreclosure suit, leaving only the Suttles' counterclaims and third-party complaint.

On April 23, 1984, the Suttles filed an amended count II of the counterclaim against the Vogels. At that time, the Vogels had received $800,000 in payments from the Dawdys pursuant to their land sale contract. The Suttles' amended counterclaim alleged that the Dawdys re-

ceived $600,000 in payments from the Suttles pursuant to their land sale contract. The counterclaim also alleged that of the $800,000 the Vogels received from the Dawdys, $600,000 is "attributable" to payments the Dawdys received from the Suttles. The counterclaim further alleged that the Vogels have been "unjustly enriched" because they recovered the 426 acres of farmland from the Suttles in *Vogel I* and retained the $600,000 in payments "attributable" to the Suttles. The Suttles finally allege that they are owed $600,000 and seek to impose a constructive trust upon the 426 acres of farmland which the Vogels recovered from them in *Vogel I*.

Count II of the Suttles' amended counterclaim, which is the subject of the present case, provides in part:

"3. That [the Vogels] *** knew that [the Suttles] were purchasing the property from Jim G. and Carolyn S. Dawdy and were making the payments under said contract and were paying the real estate taxes on the property.

4. That [the Vogels] accepted the benefits of the contract between the Dawdy's [*sic*] and [the Suttles] and have received payments on the contract attributable to [the Suttles] in excess of $60,000 [*sic*].

5. That while contract for deed *** between [the Vogels] and Dawdys contained a non-assignment clause, [the Vogels] knew of the assignment by Dawdy to [the Suttles] in 1979. In March of 1980 [the Suttles] spoke to [the Vogels] to determine whether a contract payment made by them to Dawdys had likewise precipitated payment to [the Vogels]. That [the Vogels] have acquiesced in or ratified the assignment by the Dawdys. [The Vogels] by failing to object to the assignment when first it was acknowledged, are estopped from later claiming that the assignment was ineffective.

6. That [the Vogels] have indirectly received purchase money from [the Suttles] as third-party beneficiaries of the Dawdy-Suttles Contract ***.

7. That permitting the retention of purchase price payments traced to [the Vogels] as well as the other beneficial payments and improvements made, would unjustly enrich [the Vogels].

8. That equity will raise a constructive trust in the circumstances of this transaction, to the extent of [the Vogels'] unfair profiting at [the Suttles'] expense.

9. That the extent of [the Suttles'] beneficial interest in [the Vogels'] property and the amount by which [the Vogels are] presently being unjustly enriched is $600,000."

On July 19, 1984, Carroll, the Suttles' former attorney and a third-party defendant in a third-party complaint filed by them, submitted a request for production of documents to all parties, including the Vogels, pursuant to Supreme Court Rule 214 (107 Ill. 2d R. 214). The Vogels did not respond until August 14, 1985, thirteen months after Carroll's discovery request. During those 13 months, the Vogels received two Rule 214 requests for production of documents, four Rule 201(k) letters (107 Ill. 2d R. 201(k)) requesting production of documents, and three circuit court orders to compel production of the requested documents. The Vogels neither responded to these requests and orders nor appeared at any of the discovery hearings. As a result, default judgment was entered against them.

The Vogels finally responded on August 14, 1985, and moved to vacate the default judgment. During the next five months, from August 14, 1985, to January 23, 1986, the circuit court conditionally vacated the default judgment against the Vogels and extended the time for them to satisfy the conditions for vacating the default judgment.

On January 23, 1986, following 18 months of futile efforts to get the Vogels to produce the documents, the circuit court denied their second motion for an extension of time, one that falsely claimed that they had complied

with the court's second condition for vacating default judgment; denied their motion to vacate default judgment; reentered default judgment against them as a discovery sanction; and imposed the constructive trust sought by the Suttles.

The first issue presented for review is whether the Suttles' amended counterclaim states a cause of action for constructive trust, because a default judgment must be reversed when the complaint upon which that judgment is premised fails to state a cause of action. *Roe v. Cook County* (1934), 358 Ill. 568, 570; *Buck v. Citizens' Coal Mining Co.* (1912), 254 Ill. 198, 202.

"A constructive trust is one raised by operation of law as distinguished from a trust created by express agreement between the settlor and the trustee." (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 253.) A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 293), because it would be inequitable for that party to retain possession of the property. The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary. *Charles Hester*, 114 Ill. 2d at 293.

A constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty and a subsequent breach of that duty. (*Charles Hester*, 114 Ill. 2d at 293; *Ray v. Winter* (1977), 67 Ill. 2d 296, 303.) A constructive trust may also arise when duress, coercion or mistake is present. (*Charles Hester*, 114 Ill. 2d at 293.) Some form of wrongdoing is a prerequisite to the imposition of a constructive trust. *Charles Hester*, 114 Ill. 2d at 293.

A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing (*Perry*, 25 Ill. 2d at 253; see also *Dial v. Dial* (1959), 17 Ill. 2d 537, 541), such as fraud, breach of fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion. *Perry*, 25 Ill. 2d at 253; *Lux v. Lelija* (1958), 14 Ill. 2d 540, 546; *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 494.

Count II of the Suttles' amended counterclaim merely alleges that the Vogels accepted payments from the Dawdys after learning about the Dawdy-Suttles contract, thereby ratifying that contract and consequently waiving the nonassignment clause found in the Vogel-Dawdy contract. Significantly, the count does not allege facts charging actual or constructive fraud, duress, coercion or mistake against the Vogels, nor are there any facts alleged which raise a fiduciary duty between the Vogels and the Suttles. At best, the Suttles' amended counterclaim hints at a fiduciary duty by means of the Vogels' alleged ratification of the Dawdy-Suttles contract and consequent waiver of the nonassignment clause. This court, however, concluded in *Vogel I* that the question of ratification and the consequent waiver did not apply, since the Vogels and the Suttles were not in privity of contract and that "[t]he Suttles could pursue a remedy only under their contract with the Dawdys." (107 Ill. 2d at 77.) Consequently, the Suttles cannot, now, allege breach of fiduciary duty against the Vogels. As the Suttles' amended counterclaim fails to state a cause of action for the declaration of a constructive trust, the default judgment entered against the Vogels must be reversed.

Since the default judgment entered against the Vogels must be reversed, we need not address the second issue regarding whether the circuit court's entry of default

judgment as a discovery sanction against the Vogels and its subsequent refusal to vacate such judgment constitute an abuse of discretion.

The final issue on appeal is whether the doctrines of *res judicata* or collateral estoppel bar the present action. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any future actions between the same parties or their privies on the *same* cause of action. *Catlett v. Novak* (1987), 116 Ill. 2d 63, 67; *State Bank v. A-Way, Inc.* (1987), 115 Ill. 2d 401, 409.

The Vogels argue that the final judgment in *Vogel I* is *res judicata* which bars the current action. That argument, however, is incorrect. The present action involves a suit for constructive trust, while the prior case sought possession of real estate pursuant to the forcible entry and detainer statute (Ill. Rev. Stat. 1981, ch. 110, par. 9—102). Accordingly, the prior action does not bar the current action, as each is a separate and distinct cause of action.

Furthermore, section 9—106 of the forcible entry and detainer statute provides: "No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." (Ill. Rev. Stat. 1981, ch. 110, par. 9—106.) The purpose of a forcible entry and detainer action is to determine who is entitled to the possession of land. Clearly, an action to impose a constructive trust is not germane to the distinctive purpose of a forcible entry and detainer action. Consequently, the Suttles could not have introduced their constructive trust action as a counterclaim in *Vogel I*. Thus, the current action is not barred by the doctrine of *res judicata*.

The doctrine of collateral estoppel provides that an issue which has been raised and decided by a court of competent jurisdiction cannot be relitigated in a subse-

quent action between the same parties in the same or a different cause of action. (*Telegraph Savings & Loan Association v. Schilling* (1984), 105 Ill. 2d 166, 178; *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252.) As the Suttles' counterclaim failed to state a cause of action for constructive trust, we need not address the issue of whether collateral estoppel applies in this case.

For the reasons stated above, we reverse and remand this case to the circuit court for proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE STAMOS, dissenting:

I believe the majority misapprehends both the object of the constructive trust sought to be raised and the proper standards for raising it.

The majority states that, in amended count II of their counterclaim, the Suttles "seek to impose a constructive trust upon the 426 acres of farmland." (126 Ill. 2d at 191.) Yet an examination of the counterclaim's language, reproduced in the opinion (126 Ill. 2d at 191-92), discloses that the Suttles merely seek a constructive trust, without specifying that it pertain to the farmland rather than to the $600,000 by which they claim that the Vogels have been unjustly enriched (126 Ill. 2d at 191). Indeed, the gravamen of the amended count II, as reproduced in the opinion, is that retention by the Vogels of the $600,000 is the inequity in the case, not that the Vogels' repossession of the farmland itself was inequitable. Even though the Suttles' prayer for relief (not reproduced in the opinion) couched the request for a constructive trust

in terms of the Vogels' "property" rather than of the $600,000 specifically, this court should consider the amended count II to be seeking a constructive trust as to the $600,000, since it is at this trust object that the count is clearly aimed.

Shifting the perceived focus of the Suttles' action from the farmland to the $600,000 also helps to cast new light on the standards for imposing the trust. The majority is unable to see in the Suttles' counterclaim any of the specific allegations of wrongdoing that it deems necessary to raise a constructive trust. (Although the majority also notes that to impose a trust the grounds therefor must be clear and convincing, that issue would be premature at this stage of the case, since at this stage the only question is whether the amended count II states a cause of action. If a cause of action is stated, it will then be up to the trial court to determine in the first instance whether the grounds for the relief sought are convincing.)

Focusing on the $600,000 as the trust object, I consider that the following allegations are sufficiently specific claims of wrongfulness: (1) that the Vogels knowingly accepted the benefits of the Suttles-Dawdy contract and thereby received payments attributable to the Suttles; (2) that the Vogels knew of the "assignment" to the Suttles in arguable violation of the Vogel-Dawdy contract's "non-assignment clause" but that the Vogels nevertheless acquiesced in the "assignment" while accepting payments made as a result of it and attributable to the Suttles; and (3) that retention of the payments attributable to the Suttles unjustly enriches the Vogels. None of these allegations, of course, contends that the Vogels are in possession of the farmland unjustly, but then it is the $600,000 and not the farmland that should be considered the object of the trust sought.

The allegations certainly constitute charges of mistake, if it is assumed from the counterclaim's language that the Suttles understood the Vogels to have acknowledged and agreed to the Dawdy-Suttles "assignment." The allegations also constitute charges of fraud, if fraud is considered in its constructive sense rather than as intentional wrongdoing. In any event, our courts have repeatedly raised constructive trusts in circumstances falling short of actual fraud.

"A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party to the transaction, without violating some established principle of equity." (*In re Estate of Ray* (1972), 7 Ill. App. 3d 433, 439; accord *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 26; *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, 755.) "[I]n order to establish the constructive trust *** [i]t is sufficient if, in fact, the party has received money properly belonging to another under circumstances that in equity he ought not be allowed to retain it." *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, 755; accord *Chicago Park District v. Kenroy, Inc.* (1982), 107 Ill. App. 3d 222, 224; *Selmaville Community Consolidated School District No. 10 v. Salem Elementary School District No. 111* (1981), 96 Ill. App. 3d 1062, 1066-67.

"Illinois law holds that a constructive trust may be imposed when so required by equity and good conscience; the presence of fraud is not controlling," and a constructive trust is not restricted to grounds of fraud or breach of a fiduciary relationship. (*Roth v. Carlyle Real Estate Limited Partnership VII* (1984), 129 Ill. App. 3d 433, 438.) In *Charles Hester Enterprises, Inc. v.*

*Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, on which the majority relies for a requirement of "wrongdoing," this court recognized disjunctively that "[s]ome form of wrongful *or unconscionable* conduct" is required for imposition of a constructive trust. (Emphasis added.) (*Charles Hester*, 114 Ill. 2d at 293.) While judging from the complaint the Vogels may not have come into possession of the $600,000 wrongfully, their retention of it under the ensuing circumstances may be deemed unconscionable and thus enough to justify a constructive trust. In this connection, the failure of the counterclaim's amended count II to recite the Vogels' repossession of the farmland as part of the unjust-enrichment rationale is, as the appellate court observed (160 Ill. App. 3d at 478-79), a matter of form, not substance, and is a pleading defect easily curable.

As for whether the allegations of ratification of the "assignment" constitute a claim of fiduciary duty, the majority concludes that, because of our decision in *Vogel I*, the Suttles cannot now allege a fiduciary duty or its breach. (126 Ill. 2d at 194.) I believe that the majority is incorrect in this conclusion, for the reasons very well set forth by the appellate court (160 Ill. App. 3d at 483).

Our statement in *Vogel I* that "[t]he Suttles could pursue a remedy only under their contract with the Dawdys" (*Vogel I*, 107 Ill. 2d at 77) should be taken to mean merely that the Suttles can have no contractual action at law against the Vogels, with whom they never contracted. Our statement should not be taken to bar the present equitable action by the Suttles against the Vogels, since the action does not depend on existence of a contractual relationship but depends rather on existence of inequity, and since no such equitable action or fiduciary duty was at issue in *Vogel I*.

*Vogel I* merely precluded the assertion of an "assignment" ratification as a defense to the action for forcible

entry and detainer that was the subject matter there—a strictly statutory action involving possession of land and based on the parties' contractual relationship or lack thereof. By contrast, the present action is equitable, involves a claim to money, and is based on allegedly unjust retention by the Vogels of that money. Moreover, the present action need depend not on whether ratification actually occurred (even if *Vogel I* were to be considered to estop the Suttles on that point) but merely on whether the Vogels' retention of the $600,000 is unjust and wrongful because the Suttles paid it in the belief that a ratification had occurred.

Had the majority accepted my view of the counterclaim's sufficiency to state a cause of action, it would then be necessary for the court to address whether the default judgment against the Vogels represented an abuse of discretion. On this question I intimate no view, but I believe it to be the real crux of this appeal, since I agree with the majority that the doctrine of *res judicata* does not bar the present action (though it was unnecessary for the majority to address the latter doctrine after having concluded that no cause of action is stated), and collateral estoppel is likewise inapplicable.

A word may be in order about the supposed non-assignment clause and the "assignment" to the Suttles. Although in the course of two trips to this court the parties do not appear to have litigated the question, I doubt whether the clause in the original Vogel-Dawdy contract was actually limited to prohibiting assignments. Rather, it purported to prohibit alienation of the real estate as well as assignment of the purchase contract. (See *Vogel I*, 107 Ill. 2d at 71.) Furthermore, the Dawdy-Suttles contract was apparently a new contract of sale, not an assignment of the Vogel-Dawdy contract (see, *e.g.*, *Vogel I*, 107 Ill. 2d at 74), even though the Dawdy-Suttles contract expressly recognized the Vogel-Dawdy contract's

existence (see *Vogel I*, 107 Ill. 2d at 73; *Vogel I*, 123 Ill. App. 3d 356, 358-59) and even though a default judgment was entered against the Dawdys on the issue of Vogel-Dawdy contract breach (see *Vogel I*, 107 Ill. 2d at 72).

Restraints on alienation of real estate are generally disfavored (see *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 123-24; *Gale v. York Center Community Cooperative, Inc.* (1960), 21 Ill. 2d 86, 91-92), even though a restraint on alienation that is contained in a real estate sale contract may be held reasonable and hence valid (see *Baker*, 61 Ill. 2d at 124-25), and even though in preservation of the farmland as "an economic unit" (see *Vogel I*, 107 Ill. 2d at 73) might have been found an intent to protect the security interests of the Vogels and hence a reasonable restraint (see *Baker*, 61 Ill. 2d at 124-26). This question is now academic in light of the history of this controversy, but it is nevertheless possible that the matter might profitably have been explored more thoroughly at an earlier stage, in which case the outcome in *Vogel I* might conceivably have been different and the present cause never litigated.

The academic existence of the "assignment" question, coupled with an assumption of the truth of the counterclaim, reinforces my belief in the injustice of permitting the Vogels both to regain the real estate and to retain all the hundreds of thousands of dollars paid toward its anticipated purchase, while leaving the Suttles to seek recovery only from their attorney or the Dawdys. Even if the Suttles were eventually to obtain a judgment against their attorney or the Dawdys, and even if such a defendant were solvent or in turn obtained a judgment against the Vogels on some theory in order to facilitate payment of a judgment debt to the Suttles, the process of litigation would be circuitous and risky. Meanwhile, according to the counterclaim, the Vogels retain a large sum of

money that equitably belongs to the Suttles, and the right to this money could be tried directly if the counterclaim were held to state a cause of action. Accordingly, I respectfully dissent.