*In re* MARRIAGE OF JOHN E. HUMPHREY, Petitioner, and LULA D. HUMPHREY, Respondent-Appellee (Verlyn L. White, d/b/a Medic's Ambulance Service, Intervenor-Appellant).

Fifth District   No. 5—90—0148

Opinion filed June 6, 1991.

Eric M. Rhein, of Edward J. Blake, Jr., P.C., of Belleville, for appellant.

Patrick M. Flynn, of Flynn & Guymon, of Belleville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

The judgment that dissolved the Humphrey marriage ordered the husband to pay maintenance and child support. He did not pay. The circuit court held him in contempt of court, entered judgment against him for arrearages, and ordered him to pay 25% of the gross proceeds payable from the Illinois Department of Public Aid to his business, Medic's Ambulance Service.

The husband then sold the ambulance service to Earl Allston, who in turn sold it to Verlyn White, who filed a motion for leave to intervene and a motion for declaratory relief. The intervenor claimed that she owed neither support nor maintenance and therefore should not be required to pay over to the ex-wife 25% of Medic's Public Aid receipts.

The circuit court allowed intervention but denied declaratory relief and instead ordered the intervenor to pay 25% of the proceeds she had received from Public Aid and imposed a constructive trust on 25% of all future Public Aid receipts. The circuit court based its ruling on the following findings: (1) intervenor had received Public Aid money; and (2) the husband, in reality, had not sold the ambulance service, but instead the deal he made with intervenor was a "sham and a subterfuge" that allowed him to retain the control of the ambulance service and to avoid attachment of the income generated by the ambulance service.

■ A constructive trust arises by operation of law (*Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 154 N.E.2d 259) and requires for its imposition some form of wrongful or unconscionable conduct. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 533 N.E.2d 901.) Constructive trusts are imposed when: (1) there has been actual fraud; or (2) a fiduciary relationship has been abused. *Lux v. Lelija* (1958), 14 Ill. 2d 540, 152 N.E.2d 853.

In the case at bar, there was no fiduciary relationship between the intervenor and the children and the ex-wife to whom support was owed. The question for the circuit court was whether the evidence established fraud so that a trust, *pro tanto* 25% of the receipts from

Public Aid, could be imposed. The circuit court ruled that the evidence established fraud and imposed the trust. For us, the issue is whether that ruling is against the manifest weight of the evidence.

The husband sold the ambulance service to Earl Allston, who, in turn, sold the business to Verlyn White, the intervenor. Allston testified:

"Q. Prior to signing this agreement, had you discussed with Mr. Humphrey that an agreement would be prepared?

A. Well, he had agreed to pay me back, you know.

Q. What did he agree to do?

A. Just repay the loan back.

Q. Okay. I don't understand. What loan?

A. Well, you know, the monies for purchasing the ambulance service.

Q. What money would that be? Do you understand the question, Mr. Allston?

A. I'm getting confused.

Q. Okay. Let's back up a minute. Forgetting about the agreement, can you tell me what was your understanding as to the purchase of the business? What were you going to do? What was Mr. Humphrey going to do?

A. Well, he was just going to be employed once we had got the business, taken over and stuff, if things were going to go right.

* * *

Q. You said a while ago that Mr. Humphrey had agreed to repay the loan; that was the money for the purchase of the business. Do you remember saying that?

A. Yes.

Q. What loan are you talking about?

A. Well, see my father was going to loan me the money to go into business with a friend of mine. He had a lawsuit. He was in an accident, so he had the money.

* * *

Q. Now, this money that you were going to borrow from your father, was it your understanding that Mr. Humphrey was going to help you repay that loan?

A. Yes.

* * *

Q. When you signed the agreement, did you give Mr. Humphrey any money?

A. No, sir.

Q. Did he give you any money?

A. (Nodding)

Q. Did he give you anything?

A. Nope.

* * *

Q. Right. In connection with business, sorry. Did you ever take control of the business?

A. Not really.

Q. Did you ever begin to operate the business?

A. No. Like I told you before, I didn't know a lot of things about it anyway."

It is obvious that no real purchase was contemplated. Rather, the evidence established a ruse to defeat the order of support. It is equally obvious from Allston's testimony regarding the sale of the business to Verlyn White that Mr. Humphrey, now ostensibly just an employee, was actively involved in the sale of the business to Verlyn White. When testifying about signing the contract to sell the business to Verlyn White, Allston testified as follows:

"Q. Who gave you the document? Who gave you the document to sign?

A. Mr. Humphrey.

Q. Who else was present at the time that you signed it?

A. Mrs. White."

■ The evidence amply supports the circuit court's finding that these "transactions" were shams, tools of subterfuge, and therefore fraudulent. Accordingly, the circuit court did not err by imposing a constructive trust, *pro tanto*, 25% of whatever the ambulance service would receive from Public Aid. The circuit court, exercising its equity powers, had the discretion to do more: it could have imposed a trust on all the assets of the ambulance service.

The circuit court is affirmed.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.