SANDRA SOLOMON KURTZ *et al.*, Plaintiffs-Appellants, v. GARY SOLOMON *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—3327

Opinion filed September 29, 1995.—Rehearing denied October 25, 1995.

William J. Harte, Ltd., and Rudnick & Wolfe, both of Chicago (William J. Harte, George L. Grumley, Stephen L. Garcia, and John D. Burke, of counsel), for appellants.

Abramson & Fox, of Chicago (Donald P. Colleton and James L. Fox, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Sandra Solomon Kurtz and Susan Kurtz, appeal from the trial court's judgment in favor of the defendants, Gary Solomon and Gary Solomon & Company, on their complaint seeking an accounting for investments the defendants made on the plaintiffs' behalf. We consider whether it was against the manifest weight of the evidence for the trial judge to find that: (1) there was no express trust between the plaintiffs and Solomon; (2) there was no fiduciary relationship between the plaintiffs and Solomon and, therefore, no basis for a constructive trust or accounting; and (3) the plaintiffs' cause of action for an accounting was barred by *laches*. For the following reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

On October 16, 1981, Kurtz filed a verified complaint on behalf of herself and her minor daughter, Susan, against Solomon and his company. Solomon was Kurtz's brother and Susan's uncle. A few days after the original complaint was filed, Susan turned 18 years old. An amended verified complaint was subsequently filed in 1992 which alleged in count I that Solomon breached an express trust and requested an accounting for the investments the defendants made for the plaintiffs from 1968 to 1981. In count II, the plaintiffs alleged that Solomon breached a fiduciary relationship in handling those investments and requested an accounting and a constructive trust. The defendants answered the complaint and asserted several affirmative defenses, including *laches*.

The following evidence was presented in a bench trial. In 1968, Kurtz and Susan, who was five years old at the time, inherited $40,000 and $5,000, respectively, from a relative. Kurtz testified that

after much discussion with Solomon, she agreed to give him the inheritances to invest as their trustee. Solomon testified that he did not agree to act as their trustee but held Kurtz's money to keep it from her creditors and so she would not spend it. From 1968 to about 1980, Solomon invested the money in stocks and real estate.

Kurtz had an undergraduate degree in teaching and a master's degree in early childhood education. She was a teacher. Solomon had some college education, although apparently no degree, and was a real estate investor and developer. By the time of trial, Solomon had acquired about $16 million in assets. Kurtz had tax liens against her for several thousand dollars at the time of the inheritance.

Kurtz testified that on July 1, 1971, she signed a trust agreement with Solomon which stated that he would continue to act as her trustee as he had been since she inherited the money in 1968. Kurtz was not given a copy of the agreement and did not make notes of it; she gave the agreement back to Solomon. She recalled that the agreement listed real estate which was the only property subject to the agreement. She remembered the date of the agreement because she subsequently received dividend checks with that date on them. Kurtz admitted that she never told anyone of the trust agreement, including an accountant and a lawyer who would have needed that information. She did not disclose the trust to lenders when she purchased her house in 1972 or when she refinanced it in 1978. Solomon testified that they never entered into a written trust agreement and that he made up the July 1, 1971, date to purchase stock from which Kurtz received dividends.

Solomon sent Kurtz monthly statements of the condition of their investments beginning in August 1968. He sent only one statement for Susan's investment, in November 1968, and did not separate Kurtz's and Susan's investments. Kurtz testified that she only received the statements until about 1972; she did not read them but threw them away. Solomon testified that he sent the statements until 1975 and he threw his copies of the statements away in 1975. Also, he did not think he had to keep the statements because Kurtz was his sister. Only two statements of condition were produced at trial: one dated October 31, 1968, and the other dated November 31, 1968.

During the relevant time period of the complaint, Solomon had acquired an interest in about 32 buildings. Kurtz testified that she had an interest in all of these buildings; however, she only reported income on her tax returns from five buildings: Cullom/Kedzie, Whipple/Ainslie, Argyle/Kedzie, Southeast Village, and Clark Street. Her tax returns did not indicate an interest in any of the other real estate in which Solomon had acquired an interest. Her mortgage ap-

plication for her house listed only these five properties. Solomon sent Kurtz monthly operating statements for the five buildings but Kurtz did not look at them and threw them away. Solomon admitted that he used some of Kurtz's draw checks from the building accounts but he had Kurtz's permission to do so. Kurtz denied that she gave Solomon such permission.

Kurtz acquired a 25% interest in the Cullom/Kedzie property in July 1968. When they bought it, Solomon paid Kurtz's share and she later repaid him. Solomon also owned a 25% interest and the remaining interest was owned by third parties. In 1974, Kurtz and Solomon swapped their interests in the Cullom/Kedzie property for William Levy's 40% interest in the Clark Street property. Solomon signed Kurtz's name, with her permission, to the agreement and Kurtz signed the actual assignment. Kurtz's income from this property was about $3,400. Kurtz admitted that in her deposition she testified that she did not think Solomon held this property as her trustee.

Using Kurtz as a nominee, Solomon purchased the Whipple/Ainslie property in July 1971 and Kurtz then assigned 80% of the interest to Solomon. The property was sold in 1975, repurchased after default, and then sold again in 1978. Kurtz's income from the property was $17,775.

Solomon acquired a 40% interest in the Argyle/Kedzie property in 1972 and Kurtz subsequently purchased a 20% interest for $6,000. The property was sold in 1974, and Kurtz's income was $15,140.

The Southeast Village property was acquired apparently as a joint venture by Solomon, Kurtz, and Monte Viner in July 1975. Kurtz had a 10% interest. Kurtz's income was $800 and the property was donated to charity because it was not profitable.

The Clark Street property was the only real estate which Solomon and Kurtz still had an interest in at the time of trial. In September 1968, Solomon acquired a 50% interest in the property which was held in joint tenancy with his mother. The remaining 50% was held by third parties, the Levys. Kurtz acquired a 10% interest in the property from the Levys on October 3, 1968, for $3,500. Solomon testified that the initial negotiations for the assignment involved Kurtz receiving a 25% interest in the Clark Street property and as a result, he sent Kurtz a document dated October 31, 1968, titled "Statement of Condition," which stated "25% interest 7220 Clark statement due." Kurtz admitted that in her deposition she testified she did not think Solomon held this property as her trustee.

Solomon testified that Kurtz's interest in the property increased to 30% when she swapped her and Solomon's interest in the Cullom/Kedzie property with Levy's interest in the Clark Street property in

1974. Solomon testified that to refinance the property in 1977, Kurtz and Solomon executed a direction to the trustee to convey the property to a nominee and the property was subsequently held in trust by an agreement dated May 26, 1977, listing Solomon as the beneficiary. Solomon testified that "in equity and good conscience" Kurtz owned 30% of the beneficial interest. Kurtz did not learn until January 1981 that Solomon was listed as the sole beneficiary under the land trust holding the Clark Street property. At the time of trial in 1992, Solomon was still the sole beneficiary of the trust, although he testified he was ready, willing, and able to convey the 30% interest in the Clark Street property back to Kurtz. There was "no reason whatsoever," as Solomon testified, why he had not conveyed Kurtz's interest back to her. The value of Kurtz's interest at the time of trial was about $350,000. Kurtz's income from this property was about $117,000.

Kurtz testified that in April 1978 Solomon convinced her to refinance her house and invest $32,000 to renovate the Clark Street property. Solomon stated he repaid the loan with stock purchases for the same amount, which Sandra said she did not authorize.

Solomon testified that beginning in 1975, Kurtz instructed him to use her draw checks from the buildings to purchase utility stocks for herself and Susan. Kurtz received the dividends.

The record includes several stock certificates for shares of utility stock which indicate that Solomon was acting as a trustee for Kurtz and Susan. A stock certificate dated September 17, 1975, stated that Solomon owned the shares as trustee of the Sandra Kurtz trust dated July 1, 1971. A certificate dated March 23, 1976, stated that Solomon owned the shares as trustee under an agreement dated October 10, 1975, for the benefit of Susan Kurtz. Two other certificates dated July 3, 1978, stated that Solomon owned shares as trustee of the Sandra Kurtz trust dated July 1, 1971, and as trustee of the Susan Beth Kurtz trust dated August 1, 1974. Another certificate dated November 21, 1978, stated that Solomon owned the shares as trustee under an agreement dated December 20, 1976, for the benefit of Susan Kurtz. Solomon testified that at his broker's suggestion, he purchased the stock as trustee for convenience sake even though there were no such trust agreements.

In December 1980, a family friend told Kurtz that Solomon had been cheating her and using her money for himself. Kurtz confronted Solomon and requested an accounting of the investments but he refused. Kurtz investigated the state of the investments as she knew them and filed the present action 10 months later.

After considering the evidence presented at the hearing, the trial

judge found that Kurtz's testimony and the documents which identified Solomon as a trustee were insufficient to prove by clear and convincing evidence that there was an express trust between the parties as alleged in count I. The judge also found that there was insufficient evidence to show a fiduciary relationship between the parties and that Kurtz was fully informed of the investments and directed or approved of Solomon's actions. In addition, the plaintiffs' claims were barred by *laches* because during the time period of the complaint, they consistently benefitted from Solomon's efforts and Kurtz failed to object until 1980. Also, because of the passage of time and the complex nature of the investments, it was almost impossible to reconstruct the transactions. The judge found that Kurtz was intelligent and knowledgeable about basic financial transactions and her testimony amounted to "little more than selective recall." Judgment was entered against the plaintiffs and they now appeal.

OPINION

The plaintiffs initially challenge the trial judge's findings that there was no express trust, whether oral or written, between them and Solomon and that there was no fiduciary relationship between them.

In a bench trial, the trial judge must weigh the evidence and make findings of fact; where evidence is conflicting, the judge must weigh it and consider it in view of all of the evidence. (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 581 N.E.2d 656.) A reviewing court will defer to the trial judge's findings of fact when they are dependent on the credibility of the witnesses unless the findings are against the manifest weight of the evidence. (*Kalata*, 144 Ill. 2d 425, 581 N.E.2d 656.) A ruling is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 607 N.E.2d 1337.

An express trust is created by the terms of a will, deed, or other writing or arises from the direct and positive action of the parties as evidenced by a written instrument. (*Buhle v. Chicago Board of Options Exchange, Inc.* (1988), 170 Ill. App. 3d 65, 523 N.E.2d 1276.) The requirements of an express trust are: (1) the intent of the parties to create a trust either by a declaration of a trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee. (*In re Estate of Zukerman* (1991), 218 Ill. App. 3d 325, 578

N.E.2d 248.) An oral express trust must be proven by clear and convincing evidence. (*Zukerman*, 218 Ill. App. 3d 325, 578 N.E.2d 248.) The acts or words supporting a claim of an oral express trust must be so unequivocal as to lead to only one conclusion; if the evidence is doubtful or capable of reasonable explanation on any other theory, it is insufficient to prove an oral express trust. (*Zukerman*, 218 Ill. App. 3d 325, 578 N.E.2d 248.) A trial judge's finding as to whether a trust existed will not be reversed on appeal unless it was against the manifest weight of the evidence. *Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 469 N.E.2d 257.

■ In arguing that the evidence established an express trust, the plaintiffs rely on Kurtz's testimony and the documents that indicated Solomon was acting as their trustee. Kurtz testified that they subsequently executed a trust agreement but the plaintiffs were unable to produce a copy of the agreement which Kurtz testified she executed on July 1, 1971. Kurtz did not disclose the trust to her accountant, lawyer, or mortgage lenders. Kurtz stated that she remembered the date because she received dividend checks with that date on them. The stock certificate stating a trust agreement of July 1, 1971, is some corroboration of Kurtz's testimony. Solomon, on the other hand, denied that they entered into a written trust agreement. Solomon explained that he made up the July 1, 1971, date and identified himself as a trustee only for convenience in purchasing the stock. Other stock certificates indicated trust agreements of different dates, but Kurtz did not testify that any other trust agreement was actually executed. This evidence of the varying dates of trust agreements, without any testimony from Kurtz that such agreements were executed, supported Solomon's testimony that the stocks were purchased in his name as trustee solely for convenience sake rather than as a result of an express trust agreement with Kurtz. The trial judge apparently found Solomon was more credible on this point, and the record does not show that the opposite conclusion was clearly apparent.

■ The plaintiffs also claim that they presented sufficient evidence of an oral express trust between them and Solomon. The evidence relevant to this claim was disputed. Kurtz testified that when she first allowed Solomon to invest her and Susan's inheritances, he agreed to act as their trustee. Solomon denied this claim. No documents relating to the real estate support Kurtz's claim. The trial judge was in the best position to resolve this dispute in the testimony and he did not find Kurtz's testimony credible. The plaintiffs did not present sufficient evidence at trial of an oral express trust.

The plaintiffs rely heavily on *Zukerman*, where the reviewing court held that there was sufficient evidence presented at trial of an

express trust. The evidence consisted of a bond which stated that the deceased held it as trustee for his companion. Also, a bank officer testified that the deceased requested another bond to be retitled reflecting the trustee relationship and that the deceased had repeatedly said he wanted the bonds to be given to his companion on his death. Unlike *Zukerman,* the situation presented here is much more complex because it involved many different transactions at different times, the testimony and documents were conflicting, and it rested on the testimony of Kurtz, who was an interested witness. *Zukerman* does not require a reversal of the trial judge's decision here.

As a result, the trial judge's finding that there was no express trust, whether written or oral, was not against the manifest weight of the evidence because the opposite conclusion was not clearly apparent.

The plaintiffs also argue that it was against the manifest weight of the evidence for the trial judge to find that there was no fiduciary relationship between them and Solomon. They contend there was sufficient evidence presented at trial of a fiduciary relationship and Solomon's breach of that relationship would justify imposing a constructive trust and requiring an accounting.

A fiduciary relationship exists when one person places trust and confidence in another who, as a result, gains influence and superiority over the other. (*Collins v. Nugent* (1982), 110 Ill. App. 3d 1026, 443 N.E.2d 277.) The relationship may arise as a matter of law, such as between agent and principal, or it may be moral, social, domestic, or personal. (*Collins,* 110 Ill. App. 3d 1026, 443 N.E.2d 277.) The factors to consider in determining whether a fiduciary relationship exists between parties, the breach of which would warrant a constructive trust, include the degree of kinship, the disparity in age, health, mental condition, education, and business experience, and the degree of trust placed in the dominant party. (*In re Estate of Kaminski* (1990), 200 Ill. App. 3d 309, 558 N.E.2d 142.) The fiduciary is prohibited from seeking a selfish benefit during the relationship. (*Collins,* 110 Ill. App. 3d 1026, 443 N.E.2d 277.) When the fiduciary relationship does not arise as a matter of law, it must be proved by clear and convincing evidence. *Collins,* 110 Ill. App. 3d 1026, 443 N.E.2d 277.

A constructive trust is an equitable remedy imposed to rectify unjust enrichment. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319.) Generally, there are two situations which give rise to a constructive trust: where there was actual fraud or a fiduciary relationship which was abused. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 533 N.E.2d 901.)

Some form of wrongful or unconscionable conduct is necessary before a constructive trust will be imposed, including duress, coercion, and mistake. (*Charles Hester Enterprises, Inc.*, 114 Ill. 2d 278, 499 N.E.2d 1319.) To establish a constructive trust, the proof must be so clear, convincing, strong, and unequivocal as to lead to one conclusion. *Suttles*, 126 Ill. 2d 186, 533 N.E.2d 901.

■ In evaluating the relevant factors, it is apparent that there was a fiduciary relationship between the plaintiffs and Solomon. There is no question based on the evidence presented at trial that when Kurtz gave Solomon her and Susan's inheritances to invest, she placed her trust and confidence in him. This trust and confidence continued throughout the investment period, as Kurtz testified. Her actions of not reading the statements of condition and otherwise not intently following the investments exhibited the amount of trust she placed in him. Kurtz and Solomon are brother and sister, but the existence of a family relationship does not create a fiduciary relationship as a matter of law (*Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 460 N.E.2d 55). There was no disparity between their health or mental condition apparent from the record. Although Kurtz was older than Solomon and apparently more educated, between the two, Solomon was more experienced and knowledgeable in the area of investment, especially real estate investment. Kurtz's education and employment experience was in an entirely different area. Other than owning her own home, she had no experience in real estate investment. On the other hand, Solomon had significant experience in that area as evidenced by the fact that Solomon was a real estate broker and made substantial investments in real estate, even apart from his investments with Kurtz. He acquired an interest in numerous buildings and amassed a personal fortune worth millions of dollars during the relevant time period. Although Kurtz was an intelligent person and knowledgeable about basic financial transactions, as the trial judge found, it was apparent that Solomon's experience and Kurtz's trust in him provided him with the superior position to Kurtz.

As to Susan, Solomon knew he was investing Susan's inheritance with Kurtz's and knew that Susan was a minor throughout the investment period. He was her uncle. There was an obvious disparity between their ages, education, and experience. Based on this evidence, the trial judge's ruling that there was no fiduciary relationship was against the manifest weight of the evidence.

In addition, there was sufficient evidence to support a finding that Solomon abused the fiduciary relationship. Contrary to the trial judge's finding that Solomon kept Kurtz "fully informed," the evidence showed that he failed to do so. The parties disputed the length

of time that Solomon sent Kurtz monthly statements of condition but even accepting Solomon's testimony, he admitted he did not send statements after 1975 and he only sent one statement for Susan's investments. Kurtz testified she did not receive the statements after 1972. For at least the last six years, and possibly the last nine years of their investment relationship, Solomon failed to keep Kurtz informed of the condition of her and Susan's investments.

■ Also, there was absolutely undisputed evidence that up until the time of trial, Solomon continued to hold Kurtz's 30% interest in the Clark Street property which he had obtained in 1977. He admitted at trial that she owns a 30% interest in the property but, for "no reason whatsoever" and without her knowledge, he has not conveyed it back to her. At the time of trial, Solomon had wrongfully and selfishly held Kurtz's interest for about 15 years. These circumstances indicate that he breached his fiduciary duty to her and, as a result, a constructive trust must be imposed on what is rightfully Kurtz's 30% interest in the Clark Street property.

■ Because the plaintiffs established a fiduciary relationship and an abuse of that relationship, they were entitled to an accounting of their investments. When an accounting is sought in equity based on a breach of a fiduciary relationship, it is not necessary for the plaintiff to show she does not have an adequate remedy at law. (*Mann v. Kemper Financial Cos.* (1992), 247 Ill. App. 3d 966, 618 N.E.2d 317.) In such situations, the plaintiff must establish a breach of a fiduciary relationship with the person required to account, the need for discovery, fraud, or the existence of complex mutual accounts. (*Mann*, 247 Ill. App. 3d 966, 618 N.E.2d 317.) The decision to grant an accounting is within the trial judge's discretion. (*Newton v. Aitken* (1994), 260 Ill. App. 3d 717, 633 N.E.2d 213.) Here, the plaintiffs proved a breach of a fiduciary relationship with Solomon, and under the circumstances, the trial judge abused his discretion in denying an accounting.

Lastly, the plaintiffs argue that the trial judge abused his discretion in finding that *laches* barred their claims. The trial judge, in addition to finding that the plaintiffs did not prove an express trust or a fiduciary relationship, also found that the defendants proved their affirmative defense of *laches*.

The two elements of *laches* are a lack of due diligence by the party asserting the claim and prejudice to the opposing party. (*Van Milligan v. Board of Fire & Police Commissioners* (1994), 158 Ill. 2d 85, 630 N.E.2d 830.) Generally, *laches* cannot be imposed against a party unless she knew of the facts on which her claim was based and failed to act in a timely manner or she was unaware of the facts but was not diligent in discovering them. (*Senese v. Climatemp, Inc.*

(1991), 222 Ill. App. 3d 302, 582 N.E.2d 1180.) A different rule applies when a fiduciary relationship is involved. When a fiduciary has a duty to disclose certain facts to the plaintiff but fraudulently fails to do so, the plaintiff's failure to discover the facts is excused and the time begins to run when the fraud is actually discovered. (*Prueter v. Bork* (1981), 105 Ill. App. 3d 1003, 435 N.E.2d 109.) Whether the doctrine of *laches* bars a claim is within the discretion of the trial court and its decision will not be reversed on appeal absent an abuse of discretion. *Van Milligan*, 158 Ill. 2d 85, 630 N.E.2d 830.

■ Here, Solomon was a fiduciary to Kurtz and had an obligation to keep her fully informed of the investments but failed to do so. Kurtz testified that she was not aware of any breach of a fiduciary relationship until 1980 and filed suit shortly after that. Therefore, the time period did not begin to run until Kurtz discovered the fraud and because she filed suit fairly quickly, the doctrine of *laches* should not have been applied against her.

Also, *laches* cannot be imputed to a person during his or her minority. (*In re Estate of Comiskey* (1986), 146 Ill. App. 3d 804, 497 N.E.2d 342.) Here, the complaint was filed on Susan's behalf while she was still a minor and, as a result, *laches* cannot bar her claims against Solomon.

The trial judge abused his discretion in finding that *laches* barred the plaintiffs' claims for a constructive trust based on a fiduciary relationship and an accounting.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.

CAHILL and THEIS, JJ., concur.