NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA., Plaintiff,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

HARBOR INSURANCE COMPANY and
Allstate Insurance Company, Plaintiffs,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

Nos. 85 C 7080, 85 C 7081.

United States District Court,
N.D. Illinois, E.D.

May 19, 1987.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, for plaintiffs.

John T. Hickey, Jr., John Donley, Kirkland & Ellis, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Insurers") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") liability policies (the "Policies") Insurers had issued to CIC.[2] Insurers now move for reconsideration of this Court's Sixteenth Opinion (113 F.R.D. 637 (1987)), which imposed Fed.R.Civ.P. ("Rule") 11 sanctions on them for having improperly joined Gordon Corey ("Corey"), William Hewitt ("Hewitt") and James Harper ("Harper") as defendants in these actions. For the reasons stated in this memo-

---

1. CIC and Bank are collectively called "Continental."

2. Because this Court has typically begun all its opinions in these cases with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted

this is this Court's twenty-first written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court. For the same ease in reference, earlier opinions will also be cited by number.

randum opinion and order, that motion is denied.

### Motions To Reconsider

■ This Court has frequently pointed out motions to reconsider find no mention in the Rules (see, e.g., *Settino v. City of Chicago*, 642 F.Supp. 755 (N.D.Ill.1986)). They do, however, stem from honorable common-law antecedents and can—in some circumstances—play a legitimate role (*id.; Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)). For example, it is appropriate to seek reconsideration when the applicable law or the known facts have changed since an issue was submitted to the court (*id.*).

■ That is not at all the situation here. Insurers have presented no relevant law or facts of which they were not aware when the Rule 11 sanctions were ordered in the first instance. Insurers do now make several new arguments (and remake several old ones), but each rests on matters that are really old hat. That unexplained kind of effort is itself enough to call for denial of the present motion. But because it appears Insurers still have not grasped the reasons sanctions were originally imposed, this opinion will deal with their arguments on the merits.

### Existing Law

There should be no need to rehash why Insurers had no legal basis for naming Corey, Hewitt and Harper defendants in these cases—see the Fourth (110 F.R.D. 615 (1986)), Fifth (110 F.R.D. 621 (1986)) and Sixteenth (113 F.R.D. 637 (1987)) Opinions. Yet Insurers continue to insist they had an objectively reasonable basis in law for doing so (so as to avoid Rule 11 liability). In that respect the hurdle they must overcome, as described in the Sixteenth

Opinion, may be summarized in syllogistic form: [3]

1. Article III requires the existence of an actual case or controversy before a lawsuit (including an action for a declaratory judgment) can be filed in a *federal* court. In this Circuit, no case or controversy exists between an insurer and its insured absent a live claim against the insured (*Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1189 (7th Cir.), cert. denied, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980)):

> The mere possibility that proceedings might be commenced against an insured regarding an act of the insured's as to which the insurer might contest coverage, is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution.

2. There were no proceedings pending against Corey, Hewitt or Harper when Insurers filed these actions. Instead there was only the "mere possibility that proceedings might be commenced against" them in the future.[4]

3. Therefore, unless Insurers could somehow avoid *Solo Cup* by citing contrary precedent or distinguishing it on its facts, they had no reasonable legal basis for joining Corey, Hewitt and Harper as defendants. Rule 11 sanctions were thus appropriate.

Insurers' attempts to explain away *Solo Cup*—really to explain away Article III's jurisdictional requirement—fail now for precisely the same reasons they failed earlier. Insurers cannot evade *Solo Cup* by citing the more general Article III test from *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) and claiming they had "a reasonable apprehension of liability."

---

**3.** Insurers' Mem. 6 seeks to employ the same logical device. Their effort fails to persuade, for the reasons discussed in this opinion.

**4.** This Court has already dealt with Insurers' arguments as to the *Spring* litigation and as to the without-prejudice dismissal of these defendants (*before* they were named in these lawsuits)

from the underlying securities litigation (see the Sixteenth Opinion, 113 F.R.D. at 640 nn. 9 and 10). Those again-restated arguments, and Insurers' new arguments about the hypothetical possibility that claims may yet be made against Corey, Hewitt or Harper, are unavailing in light of the *Solo Cup* "case or controversy" standard.

In terms of legal doctrine, *Solo Cup* controls because it applied the *Maryland Casualty* general test to facts wholly analogous to those here, and our Court of Appeals found *no* reasonable apprehension of liability. Moreover Insurers are equally unsuccessful in their renewed effort to distinguish these cases from *Solo Cup* in factual terms. As the Sixteenth Opinion (113 F.R.D. at 641 n. 11) has already said, the fact that these cases involve D & O liability insurance actually cuts against, rather than for, Insurers. And if anything, the fact that these defendants were named in other lawsuits *and then dismissed* (albeit without prejudice) before these actions were brought makes any "apprehension of liability" even *less* "reasonable" than in *Solo Cup* (*id.* at 640).

Insurers' persistent argument that they have a cause of action for rescission against these (as well as the other) defendants *under state law* also misses the point. Insurers were not sanctioned for failing to state any substantive cause of action (in the state law sense) against Corey, Hewitt and Harper. They ran afoul of Rule 11 on federal jurisdictional grounds: the absence of an actual case or controversy between Insurers and these three defendants.

For that reason Insurers cannot draw the comfort they seek from *Bird v. Penn Central Co.*, 334 F.Supp. 255 (E.D.Pa. 1971), *on rehearing*, 341 F.Supp. 291 (E.D. Pa.1972) and *Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1251 (D.Mass.1984). Because Insurers continue to lean so heavily on those cases, this Court must spell out once again why *Bird* and *Shapiro* do not provide a reasonable basis for Insurers' institution of suit against Corey, Hewitt and Harper in these actions.

It is true that those cases support Insurers' general ability to seek rescission of the Policies against both "innocent" and "guilty" directors and officers. But both *Bird* and *Shapiro* are wholly silent on the issue Insurers had to consider before joining Corey, Hewitt and Harper as added defendants: whether an actual controversy exists between an insurer and its insured, *but unsued*, directors and officers. That silence is entirely understandable in light of the actual pendency of claims against the directors and officers in both *Bird*, 351 F.Supp. 700, 701 (E.D.Pa.1972),[5] and *Shapiro*, 584 F.Supp. at 1248.

Considerable mystery thus attends Insurers' efforts to draw sustenance from two District Court decisions from different circuits, upholding insurer actions against directors and officers who were already named in underlying securities litigation. Even if some inference could be coaxed out of the silence of the *Bird* and *Shapiro* opinions on the "case or controversy" requirement as to unsued insureds,[6] that still could not support the existence of an actual controversy here in light of *Solo Cup*, a controlling precedent in this Circuit. Once again *Solo Cup* requires actual, and not purely hypothetical, claims against an insured—and such claims were totally lacking here, while they were present in *Bird* and *Shapiro*.

### Insurers' Pre-Filing Inquiry

In addition to revisiting their previously-advanced legal arguments, Insurers for the first time offer their pre-filing inquiry as a justification for joining Corey, Hewitt and Harper as defendants. They offer no explanation for not having made this argument earlier—after all, pre-filing inquiry is the major thrust of Rule 11, and that Rule

**5.** Insurers cited only two of the opinions in *Bird*, 334 F.Supp. 255 and 341 F.Supp. 91, in their original memorandum opposing Rule 11 liability and in their memoranda in support of this motion. Those two opinions do not speak either way to the existence of pending claims against the directors and officers. But there is a third *Bird* opinion (351 F.Supp. 700) of which Insurers were well aware: They had cited it in their memorandum opposing the motion to dismiss. That opinion (*id.* at 701) specifically re-

fers to the claims pending against the directors and officers in *Bird*. Insurers offer no explanation as to how they can *now* argue (Mem. 7) that "it is not clear" whether there were such claims, given their unquestionable awareness of the third *Bird* opinion.

**6.** But see the Sixteenth Opinion, 113 F.R.D. at 642 n. 13.

was the focus of the parties' earlier briefing just as it is now.[7] Moreover, Insurers cannot escape Rule 11 liability by pointing to an earlier but wholly unreasonable reading of the law (that would simply return Rule 11 to its pre–1983–amendment condition, when a subjective "empty head, pure heart" defense would avoid sanctions). Nevertheless the fact that Insurers did inquire and the considerations that influenced their inquiry might be enough to make their position at least colorable, rendering Rule 11 sanctions inappropriate.

Insurers first attempt to explain their reasoning for joining the defendants they did. Their research revealed that CIC and its 140 subsidiaries had more than 2,000 officers and directors, all of whom are insureds under the Policies. Insurers decided (Mem. 3):

> In order to keep these actions a reasonable size and at the same time protect

their rights, [Insurers] named as defendants only the directors of [CIC], the directors of [Bank] and those officers of [Bank] who had been named as defendants in the Continental Securities Litigation.

That rationalization just will not survive scrutiny as a justification for suing Corey, Hewitt and Harper. On their own line of analysis, Insurers had a cause of action for rescission against all of the more than 2,000 insured officers and directors, and had the same purported risk of waiver as to all of them.[8] Insurers chose to draw a line within that extremely large class, suing those whom others had sued and omitting to sue those whom others had not sued. Even if that were accepted as a rational basis for differentiating among persons posing precisely the same claimed risk (see n. 8),[9] it cuts exactly the opposite

---

7. One of the potentials for satellite litigation under Rule 11 is the court's need to inquire whether a litigant really engaged in legal analysis and factual inquiry before jumping into the litigation waters, or whether the litigant rather concocted an alleged pre-filing analysis and inquiry later—a post-hoc rationalization. For the reasons stated in the text, no such side excursion is needed here.

8. Insurers have repeatedly referred to—but have never really explained—their claimed risk of waiving any future rescission claims against Corey, Hewitt and Harper by not joining them as defendants here. In that respect, their Mem. 6 provides cryptic citations to *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569–70, 23 L.Ed.2d 129 (1969) and Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* §§ 2.27–2.28 (1982) as purportedly supporting the waiver argument. But nothing in *Zenith Radio* supports that notion, and Insurers' bare reference to Windt also does not help them. Windt § 2.28, at 74 does say:

> For example, a finding of waiver would be appropriate if the insurance company were notified of a potential claim, but the company, despite having determined that it had grounds to rescind, decided to wait until a claim was actually brought before rescinding.

In essence Insurers incorrectly equate "rescinding" in that example with "filing a suit to rescind." They would read the phrase "until a claim was actually brought before rescinding" as meaning "until a claim was actually brought [against the insured parties] before [Insurers]

filed a rescission action]." But such a reading would in fact give a successful waiver defense to *all* the defendants in these actions (not just Corey, Hewitt and Harper), because Insurers did not file these cases until *after* the underlying securities litigation began. Insurers' own strained reference to Windt as "authority" supporting the risk of waiver would thus prove a good deal more than Insurers could afford. In short, there is really nothing to Insurers' waiver argument (which no doubt explains why they have simply stated their alleged conclusion, rather than giving any real explanation). And in any case their argument is premised on the existence of a case or controversy against Corey, Hewitt and Harper—something that did not exist (see the Sixteenth Opinion, 113 F.R.D. at 643).

9. There is something a bit disquieting in Insurers' thus delegating a decision as to the naming of defendants to someone else who may have engaged in a totally uninformed and irrational choice. After all, a derivative suit or class action plaintiff who may choose to sue everyone in sight affords no realistic assurance that a colorable claim exists against a particular named defendant (except for the infrequently-faced prospect of such a plaintiff's Rule 11 exposure similar to that confronted by Insurers here). At the same time, this Court will certainly not second-guess the notion that an insured *currently* involved in substantive litigation does pose a "reasonable apprehension" of liability for the insurer, such as to justify the insured's joinder in litigation such as these cases. But once a named defendant has been deliberately dropped

way as to Corey, Hewitt and Harper, who had actually been named in other litigation *and then dismissed.* If anything, they had to be viewed as posing a *lesser* risk than a number of potentially suable but omitted defendants.

Insurers have lost sight of (or more likely never considered in the first place) the consequences of their casually dropping "one more defendant" (or in this case three more defendants) into the litigation hopper. This is massive and enormously expensive litigation. Corey, Hewitt and Harper had extricated themselves from other litigation of the same nature, plainly having satisfied counsel for plaintiffs in those other lawsuits that no known predicate for their potential liability existed. Before Insurers subjected those three individuals to more legal expenses, they had to have some reasonable justification other than the historical fact that those individuals had once been sued and then dropped as defendants. What is at stake here, it must be remembered, is whether Insurers or the three individuals should bear the cost of the added legal expenses triggered by Insurers' having made a decision to sue *without* such reasonable justification. Rule 11 thrusts the burden of that arbitrary distinction, between Corey, Hewitt and Harper on the one hand and the many excluded putative defendants on the other, on Insurers (who made the arbitrary decision).

As further claimed support for their actions, Insurers point to six other lawsuits involving the validity of D & O liability policies. In those cases the insurers sought rescission against all the insured directors and officers, including many against whom no claims were pending. Insurers say those cases show other insurers believed it was reasonable to join such directors and officers as defendants, from which Insurers conclude they were similarly reasonable in joining Corey, Hewitt and Harper.

Four of those cases [10] were filed before Insurers filed these lawsuits and could have been relied on by Insurers. They apparently offer the remaining two actions [11] as a sort of post hoc justification for their earlier actions.

Insurers themselves suggest the best of several reasons why those cases offer them cold comfort at best: Two (or in this case seven) wrongs do not make a right. All Insurers have furnished are the *complaints* in those cases—not a word from any of the courts before whom the complaints were filed. From Insurers' total silence on the matter, it is safe to conclude not one of those courts has even discussed (let alone decided) the case-or-controversy jurisdictional problem. As our Court of Appeals said in *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 622 (7th Cir.1986):

> When a court resolves a case on the merits without discussing its jurisdiction to act, it does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light.

Indeed, it is hardly an adequate "justification" in Rule 11 terms to point to a wholly untested *complaint* filed by another litigant. And even if the identical prior or subsequent errors of other plaintiffs might somehow make Insurers' actions here reasonable, fully five of the six cases offered by Insurers can't fit that bill.

*Fabulous Inns* was filed in a state court, where Article III jurisdictional limitations

---

out of the substantive litigation after material proceedings have taken place, the likelihood that such dismissal represents an informed judgment by the plaintiff(s) in the other lawsuit(s) increases exponentially.

**10.** *National Union v. AM International, Inc.,* Ch. 11 Case No. 82 B 4922, Adv. No. 84 A 0367 (Bankr.N.D.Ill. Mar. 26, 1984); *International Insurance Co. v. The State Exchange Bank,* No. 83–0555 (N.D.Ind.); *International Insurance Co.*

*v. McMullan,* No. J 84–0760(L) (S.D.Miss.); and *International Insurance Co. v. Fabulous Inns of America, Inc.,* No. 534650 (Cal.Super.Ct. Jan. 28, 1985).

**11.** *Ocean Drilling & Exploration Co. v. National Union,* No. 86–0352 (E.D.La.); and *National Union v. Murphy Oil Corp.,* No. 86 Civ. 777 (S.D.N.Y.).

play no part. Insurers' citation of that case is additional evidence of their failure to understand why they were sanctioned in the first place.

*AM International* was filed by the same counsel who now represent Insurers in these cases. Their prior error can hardly be used as a bootstrap means to justify Insurers' actions here. Parenthetically, unlike the other five cases, Insurers did not provide this Court with even a copy of the *AM International* complaint, and they do not say there were no claims pending against the directors and officers in that case. But even if they had, the case would be no better than the others cited by Insurers.

Three of the cases (*McMullan, Ocean Drilling* and *Murphy Oil*) were filed in District Courts in different circuits—and none of those cases is claimed even to have discussed the current jurisdictional issue at the trial court level, let alone being subjected to appellate scrutiny. As this Court said in the Sixteenth Opinion, 113 F.R.D. at 640, absent the precedent in *Solo Cup* Insurers might perhaps have had a colorable argument for the existence of an Article III controversy against Corey, Hewitt and Harper. In other Circuits *Solo Cup* would be relevant but not controlling precedent. That being true, and assuming there is no precedent comparable to *Solo Cup* in the relevant Circuits, plaintiffs in those other cases might advance at least a colorable argument that, under the more general language employed in *Maryland Casualty,* they have a reasonable apprehension of liability because of possible future claims against their defendants. However *Solo Cup* forecloses any such contention by Insurers in this Circuit.

That leaves only *State Exchange Bank,* a case filed in this Circuit before Insurers filed these lawsuits. Again Insurers offer nothing to suggest Article III case or controversy considerations were ever raised there. Any claimed inference of jurisdiction from the mere existence of that single pleading was simply not a reasonable predicate for Insurers' actions here in light of *Solo Cup.*

### No Harm, No Foul

Insurers' final argument can be dealt with quickly. They claim Rule 11 sanctions should not be imposed because Corey, Hewitt and Harper have not been harmed by Insurers' actions. According to Insurers, those former defendants have been indemnified by Continental for all their legal fees in these actions, so they have no need for compensation because of Insurers' unreasonable conduct.

*Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 574 (E.D.N.Y. 1986) *on remand from* 762 F.2d 243 (2d Cir.1985) does say that a party's "need for compensation" is a relevant factor in determining the amount of Rule 11 sanctions to be imposed. But the *Eastway* discussion (which dealt with the comparative burdens litigation imposes on the deep-pocket party and the individual litigant) is entirely beside the mark here. There is no more reason for Continental to bear any incremental costs imposed by Insurers' joinder of Corey, Hewitt and Harper than for those costs to be borne by the individuals themselves. Corey, Hewitt and Harper should be in no different position from the tort plaintiff who has had the foresight to obtain insurance and is obligated to place his or her insurer (in this case, Continental would stand in the shoes of that "insurer" if it has really paid the bills) in the position of a subrogee. Insurers cannot thus avoid responsibility for their own violation of Rule 11. Insurance or indemnification agreements are not what *Eastway* meant in discussing a party's "need for compensation." Such agreements are not relevant when considering the imposition and amount of Rule 11 sanctions.

### Conclusion

Insurers have not presented any new law or facts that would justify reversing this Court's imposition of Rule 11 sanctions. Their motion for reconsideration is denied.