**L.P. MAUN, M.D., LTD. and Central Bank, Appellees,**

v.

**Amorn SALYAPONGSE, Appellant.**

Civ. No. 88–3799.

Bankruptcy No. BK 86–31038.

United States District Court,
S.D. Illinois.

Sept. 8, 1989.

Thomas A. LeChien, Belleville, Ill., Brian Konzen, Granite City, Ill., for appellees.

Ronald L. Pallmann, Suelthaus & Kaplan, P.C., Fairview Heights, Ill., for appellant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is an appeal from a Memorandum and Order of the bankruptcy court, which ruled in favor of appellee L.P. Maun, M.D., Ltd., formerly known as Maun–Salyapongse, Ltd. ("debtor") and against appellant Dr. Amorn Salyapongse ("Salyapongse") on the debtor's Second Amended Complaint to Collect Revenues. 92 B.R. 790. Salyapongse appeals that portion of the bankruptcy court's Order requiring Salyapongse to turn over the sum of $74,-493.17, which constitutes the proceeds of the debtor's accounts receivable, to the debtor.

### I.   Factual Background.

The parties do not dispute the factual basis for this litigation. The debtor is a professional corporation that provides medical services to its clients. Dr. Lorenzo P. Maun ("Maun") is the debtor's president and majority stockholder, owning 51% of the corporation's stock. Salyapongse worked for debtor from 1972 until November 1985 and owned 49% of the stock of the corporation. Salyapongse was authorized to sign checks on the debtor's behalf, but he never endorsed or deposited checks received by debtor for payment on accounts receivable.

On November 11, 1985, Salyapongse ended his employment with the debtor and met with Maun to specify the conditions under which his termination would proceed. After the meeting, those matters agreed upon by Salyapongse and Maun were summarized in a letter written by Gary L. Krauss, the debtor's accountant. The agreement, which was sent to both parties, provided that all revenue received for services performed by either doctor through November 11, 1985, would remain the property of the debtor and that revenue Salyapongse received for services he performed after that date would be retained by him. For services rendered after November 11, 1985, the debtor would retain only revenue that Maun generated. The termination agreement also stated that Salyapongse was to receive his pay for the month of October, 1985 "as soon as possible." The agreement did not authorize Salyapongse to cash or endorse any checks on debtor's behalf after November 11, 1985.

Salyapongse subsequently opened his own office, at which time either he or his staff submitted a change of address form to the Post Office. As a result, some mail addressed to debtor, including payments on debtor's accounts receivable, was mistakenly delivered to Salyapongse. Salyapongse initially forwarded the checks he received to the debtor. After a month had passed and Salyapongse still had not received his October, 1985 pay, he began keeping the checks that were delivered to him. Beginning on December 14, 1985, Salyapongse endorsed all checks he received with his corporation's stamp and deposited them into his corporate account. These deposits included payments that were rightfully Salyapongse's as well as those that should have gone to debtor in accordance with the parties' termination agreement. Salyapongse's staff maintained a list indicating which payments were to have gone to the debtor under the agreement.

Salyapongse informed Maun that he was keeping the checks but did not tell Maun that he planned to hold the checks hostage

until he was paid what he believed Maun owed him. The disputed sum included Salyapongse's back pay, pension plan funds, payment for Salyapongse's stock in the debtor, and payment of attorney fees. Salyapongse eventually collected $74,493.17 in payments that had been destined for the debtor's accounts receivable. Most of the funds were received before the debtor filed its bankruptcy petition on October 7, 1986, but, according to Salyapongse's own records, $2,700.00 was received after the petition was filed and $5,705.00 was received ninety days before the petition was filed.

■ On November 4, 1987, the debtor filed the Adversary Complaint to Collect Revenues. The bankruptcy court subsequently ordered Salyapongse to turn over the sum of $74,493.17 to the debtor. On appeal, Salyapongse alleges that (1) the bankruptcy court erred in determining that Salyapongse holds the accounts receivable funds for the debtor in the capacity of a bailee or trustee, and (2) Salyapongse is entitled to assert the defense of recoupment to the debtor's action because all claims arose from the same transaction. Appellee asserts that recoupment is a new defense that was not made an issue or part of the record in the lower court and therefore may not be considered by this Court. Salyapongse neglected to raise recoupment as an affirmative defense in his Answer to the Second Amended Complaint. In his Reply Brief, Salyapongse asserts that he raised recoupment as a defense by quoting from authorities that mention the words "recoup" or "recoupment." This Court finds that Salyapongse never raised a recoupment defense prior to the November 9, 1988 entry of the bankruptcy judge's Memorandum and Order. Salyapongse merely quoted passages from authorities he believed would refute debtor's argument that "converted property cannot by[sic] the subject of a setoff." RA 17.

In his Motion to Reconsider dated November 21, 1988, Salypagonse raised the recoupment defense for the first time when he stated that

Alternatively, Defendant is entitled to recoup the salary owed by Debtor from the funds held by Defendant because the claim for salary arises from the same transaction as the Debtor's claim against Defendant for accounts receivable.

RA 27.

Judge Cardozo has noted the importance of a motion to reconsider to a defeated party who acquires favorable evidence after a ruling:

Can it be that he is remediless? An appeal will not aid him, for that must be heard upon the papers on which the motion was decided.... A grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power did not exist.

*Belmont v. Erie Ry. Co.*, 52 Barb. 637, 641 (N.Y.App.Div.1869).

In *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99 (E.D.Va.1983), the district court noted that a motion to reconsider performs a valuable function where

the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Id.* at 101. *See also Fisher v. Samuels*, 691 F.Supp. 63, 74 (N.D.Ill.1988); *National Union Fire Ins. v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D.Ill.1987). In his motion to reconsider, Salyapongse appeared to imply that the bankruptcy court failed to apprehend that his affirmative defense of setoff tacitly included an allegation of entitlement to recoupment.

■ In *In re California Canners and Growers*, 62 B.R. 18 (9th Cir. BAP 1986), the Ninth Circuit Bankruptcy Appellate Panel held that the appellant did not waive a recoupment argument by raising only the defense of setoff in its Answer. *Id.* at

21–22. The appellate panel found that the bankruptcy court should have considered whether the appellant was entitled to recoupment. Significantly, the appellant in *California Canners and Growers* informed the bankruptcy court that it was alleging entitlement to recoupment, rather than the setoff cited in its Answer, in its response to a summary judgment motion. *Id.* at 21. Unlike the instant case, the lower court in *California Canners and Growers* had an opportunity to consider the recoupment defense prior to the entry of judgment. Judge Meyers, however, had no opportunity to consider any recoupment claim prior to his ruling because such a claim was never raised. This Court finds that the bankruptcy court's failure to consider a recoupment defense was not the result of the judge's misunderstanding or misapprehension. The basis for the motion to reconsider was also clearly not a controlling or significant change in the law or facts since the submission of the issue to the bankruptcy court. Rather, the post-judgment assertion of an entitlement to recoupment came about as a result of appellant's dissatisfaction with the poor showing of his setoff defense in the judge's Memorandum and Order. As appellant concedes, setoff and recoupment play a very different role in the bankruptcy context from their original role as rules of pleading. In *Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984), the Third Circuit noted that

> Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. *See* 11 U.S.C. § 506(a). Setoff is limited, however, by the provisions of 11 U.S.C. § 553.
>
> \*  \*  \*  \*  \*  \*
>
> Recoupment on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553.

*Id.* at 875.

Salyapongse specifically invoked 11 U.S.C. § 553 in his Answer and never raised the recoupment argument prior to the bankruptcy court's decision. Because Salyapongse neglected to assert any entitlement to recoupment prior to the bankruptcy court's judgment and improperly attempted to use a motion to reconsider as a vehicle for raising a defense not theretofore presented to the bankruptcy court or the other litigants, this Court regards recoupment as an issue raised for the first time on appeal. An issue not properly presented in the court below cannot be raised for the first time on appeal and form a basis for reversal. *Heller v. Equitable Life Assurance Soc'y of the United States*, 833 F.2d 1253, 1261 (7th Cir.1987); *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir.1976). The Seventh Circuit has noted that

> "a trial judge may properly depend upon counsel to apprise him of the issues for decision; he is not obligated to conduct a search for other issues which may lurk in the pleadings."

*Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985) (quoting *Desert Place, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir.1968)). Salyapongse failed to raise the issue of recoupment in either the pleadings or oral argument prior to the bankruptcy court's decision. This Court is not receptive to Salyapongse's suggestion that attorneys may allow the defense of recoupment to lurk in the bulrushes unexposed during the pleading stage of a case and while the judge is arriving at a decision, and only reveal its existence after judgment and on appeal. Therefore, the only alleged error this Court will consider is the bankruptcy court's determination that Salyapongse holds the accounts receivable funds for the debtor in the capacity of a bailee or trustee.

## II. Standard of Review.

The applicable standard of review in this case is whether the bankruptcy court's findings of fact are clearly erroneous and whether the bankruptcy court's conclusions of law are contrary to law. Bankr.R. 8013; *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir.1988). This Court must review the bankruptcy

court's legal conclusions de novo. *In re Agnew,* 818 F.2d 1284, 1286 (7th Cir.1987); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir. 1985).

### III.   Discussion

The crucial issue in this appeal is whether the funds held by Salyapongse are a debt owed to the debtor by Salyapongse that may be subject to setoff or are the property of debtor's estate that may be subject to a turnover order. The right to a setoff in bankruptcy is set forth in 11 U.S.C. § 553(a), which states in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

A creditor establishes a right to setoff under § 553(a) when the following three-part test is met:

(1) A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;

(2) A claim of the creditor against the debtor that arose prior to the commencement of the bankruptcy case; and

(3) The debt and the claim are mutual obligations.

*In re Rinehart,* 76 B.R. 746, 749 (Bankr.D. S.D.1987); *In re Brooks Farms,* 70 B.R. 368, 371 (Bankr.E.D.Wis.1987).

The bankruptcy court found that the third element of the test was not satisfied: Maun's debt and Salyapongse's claim were not mutual obligations. There is no mutuality, and no concomitant right to setoff, where the creditor does not "owe" the debtor. *See In re Maytag Sales and Service, Inc.,* 23 B.R. 384, 390 (N.D.Ga.1982); *In re Brendern Enterprises, Inc.,* 12 B.R. 458, 460 (Bankr.E.D.Pa.1981). This Court agrees with the lower court's determination that the funds held by Salyapongse are

the proceeds of the debtor's accounts receivable that are the property of the bankruptcy estate.

Appellant, however, rightfully criticized the bankruptcy court's characterization of a case involving a bailment without color of lien as essentially the same as the instant case. The bankruptcy court stated that

> The facts in *In re Brendern Enterprises, supra,* are essentially the same as these in the present case. In *Brendern Enterprises,* the debtor sought the turnover of equipment which had been shipped to the defendant for warranty repairs. The defendant sold audio equipment to the debtor for retail sale. Pursuant to an agreement, the debtor would ship the defendant equipment returned by its retail customers for repair, replacement or cash refund.
>
> Prior to the filing of the bankruptcy petition the debtor shipped a quantity of returned equipment to the defendant for warranty repairs. The defendant admitted that it had neither repaired, replaced, nor returned the equipment to the debtor, but rather attempted to assert a right to retain the equipment as a setoff against a debt owed by the debtor to the defendant. The bankruptcy court held that the returned equipment was held by the defendant in the capacity of a bailee without color of lien. Therefore, the equipment was not subject to setoff because it was not owed to the bankruptcy estate but rather was owned by it. 12 B.R. at 460. The court concludes that since no mutuality of debt existed between the parties, the debtor was entitled to turnover "undiminished by any set-off." *Id.*
>
> In the present case, it has already been established that the accounts receivable proceeds held by Salyapongse without debtor's authorization are property of debtor's estate. Therefore, Salyapongse does not "owe" debtor a debt against which he could setoff his claims against the estate.

92 B.R. at 796–97.

Appellant correctly argues that *In re Brendern Enterprises* is very unlike the

instant case in that Salyapongse cannot be considered a bailee of debtor's funds. Illinois courts define a bailment as " 'the delivery of *goods* for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them.' " *Kirby v. Chicago City Bank & Trust Co.*, 82 Ill.App.3d 1113, 403 N.E.2d 720, 723, 38 Ill.Dec. 489, 492 (1st Dist.1980) (emphasis added) (quoting *Knapp, Stout & Co. v. McCaffrey*, 178 Ill. 107, 52 N.E. 898 (1899), *aff'd*, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921 (1900)). The checks that Salyapongse collected are commercial paper, and not goods. Ill.Rev.Stat. ch. 26, ¶ 3–104(2)(b) (1987). Thus, *In re Brendern* is inapplicable insofar as it describes a debtor's rights vis-a-vis a bailee without color of lien. The bankruptcy court should have analyzed this case in the manner that debtor suggested at the hearing on the Amended Complaint to Collect Revenues—as a situation where Salyapongse was constructive trustee of the debtor's funds.

■ In *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 114 Ill.2d 278, 499 N.E.2d 1319, 102 Ill.Dec. 306 (1986), the Illinois Supreme Court stated:

A constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct. *Where property has been acquired wrongfully, the party in possession may be declared to be a constructive trustee of the property if it would be unjust for that party to retain it.* The constructive trust arises by operation of law, and the constructive trustee's sole duty is to transfer title and possession to the beneficiary. Some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust. As the court in *Ray v. Winter* (1977), 67 Ill.2d 296 [10 Ill.Dec. 225, 367 N.E.2d 678], explained, 'Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other,

where there exists a fiduciary relationship and subsequent abuse of relationship.' *Similarly, duress, coercion and mistake have been grounds for imposing a constructive trust.*

499 N.E.2d at 1326, 102 Ill.Dec. at 313 (citations omitted) (emphasis added).

Contrary to appellant's assertion, the supreme court has clearly held that imposition of a constructive trust is not confined to cases in which there is fraud or breach of a fiduciary relationship. In *Gluth Bros. Constr. v. Union Nat'l Bank*, 166 Ill. App.3d 18, 518 N.E.2d 1345, 116 Ill.Dec. 365 (2d Dist.1988) the appellate court noted that the essential requirement of the supreme court in *Charles Hester Enterprises, Inc.* was that there be a wrongful acquisition of property and that it would be unjust to allow the acquiring party to retain it. 518 N.E.2d at 1351, 116 Ill.Dec. at 371. *See also County of Lake v. X–Po Security Police Service, Inc.*, 27 Ill.App.3d 750, 327 N.E.2d 96, 100 (2d Dist.1975) ('[I]n order to establish the constructive trust ... [i]t is sufficient if, in fact, the party has received money properly belonging to another that in equity he ought not be allowed to retain it.") In *Chicago Park Dist. v. Kenroy, Inc.*, 107 Ill.App.3d 222, 437 N.E.2d 783, 63 Ill.Dec. 134 (1st Dist.1982), an appellate court presaged the supreme court's statements in *Charles Hester Enterprises, Inc.*, when it noted that

The recent trend in the Illinois law of constructive trusts has been a broadening of the circumstances in which this remedy is available. A plaintiff may be awarded a constructive trust whenever facts are shown in which a person holding legal title to the property at issue cannot retain the beneficial interest therein without violating some established principle of equity.

437 N.E.2d at 785, 63 Ill.Dec. at 136.

In the instant case, the bankruptcy court correctly found that the November 11, 1985 agreement as memorialized in Gary L. Krauss' letter of November 18, 1985, clearly provided for the disposition of debtor's accounts receivable. The parties' unambiguous agreement was that the debtor was to

receive the proceeds of the accounts receivable for services performed by both Maun and Salyapongse through November 11, 1985. As the bankruptcy court noted, "[t]he agreement merely continued the practice that was in effect until Salyapongse terminated his employment that all patient revenues were turned over to the corporation instead of being kept by the physician who performed the service." 92 B.R. at 796. Neither the language of Krauss' November 18, 1985 letter nor the evidence in the record suggests that the debtor's right to the accounts receivable funds was conditioned on Salyapongse receiving his October, 1985 pay.

The bankruptcy court in *In re Brendern Enterprises, Inc.*, 12 B.R. 458 (Bankr.E.D. Pa.1981), stated that

> A set-off is only applicable to cases where the debtor and the creditor 'owe' one another. *Ivanhoe Building & Loan Ass'n v. Orr*, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935). It is inapplicable to a situation where the debtor's property is in possession of a creditor as bailee *or trustee* without color of lien. *The title of property in such case will be in the bankrupt estate and cannot form a basis for the debt which the creditor can use as a set-off on his claims against the debtor.* *In re Fernandes Super Markets, Inc.*, 1 B.R. [299] at 299 [Bkrtcy.D.Mass.1979]; *In re Bob Richards Chrysler–Plymouth Corp.*, 473 F.2d 262, 265 (9th Cir.1973); *In re Lykens Hosiery Mills, Inc.*, 141 F.Supp. 891, 893 (S.D.N.Y.1956); *Brust v. Sturr*, 128 F.Supp. 188 (S.D.N.Y.1938); *Western Tie & Timber Co. v. Brown*, 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905); *Libby v. Hopkins*, 104 U.S. 303, 26 L.Ed. 769 (1881); 4 *Collier on Bankruptcy*, § 68.04[2.1] at 872 (14th ed. 1978).

*Id.* at 460 (emphasis added).

Therefore, if the record establishes that Salyapongse wrongfully acquired the accounts receivable proceeds and that it would be unjust to allow him to retain the funds, he is a constructive trustee who is precluded from advancing a setoff defense. The bankruptcy court's factual finding that

Salyapongse "obviously believed that the funds were rightfully debtor's," 92 B.R. at 796, is not clearly erroneous. It is also apparent, in light of the parties' unambiguous agreement and Salyapongse's initial and short-lived decision to return the checks, that it would be unjust to allow Salyapongse to retain the accounts receivable funds.

Accordingly, the bankruptcy court's determination that the $74,493.17 now being held by Salyapongse is property of debtor's estate that is being held without authorization and should be turned over to the estate is AFFIRMED as MODIFIED.

IT IS SO ORDERED.