In re Michael R. MARSHALL, Anne F. Marshall, Debtors.

Michael R. Marshall, Anne F. Marshall, Plaintiffs,

v.

Shipman Elevator Company, Defendant.

Bankruptcy No. 99–30765.
Adversary No. 99–3112.

United States Bankruptcy Court, S.D. Illinois.

Oct. 18, 1999.

Ronald L. Pallman, St. Louis, MO, for plaintiff.

Steven M. Wallace, East St. Louis, IL, for defendant.

*OPINION*

KENNETH J. MEYERS, Bankruptcy Judge.

After filing their Chapter 12 bankruptcy case, debtors Michael and Anne Marshall sold grain that was in storage with the defendant, Shipman Elevator Company ("Shipman"), and removed the grain from storage. The debtors then filed a turnover action to recover from Shipman the unused portion of storage charges that had been prepaid by the debtors.

Shipman has refused to turn over the funds sought by the debtors, asserting that it is entitled to offset its obligation to refund the unused storage charges against a corresponding obligation the debtors incurred prior to bankruptcy for goods and services provided by Shipman. At issue is whether the parties' obligations to each other constitute "mutual debts" that are subject to setoff under § 553 of the Bankruptcy Code. *See* 11 U.S.C. § 553(a).[1]

The facts are not in dispute. In October and November 1998, the debtors placed their grain in storage with Shipman and gave Shipman a total amount of $26,138.84, representing prepayment of storage charges for a period of nine months.[2] During this time, the debtors made purchases of farm supplies and other services on an open account with Shipman.

On March 12, 1999, the debtors filed their Chapter 12 bankruptcy petition. After obtaining court approval, the debtors sold and removed the stored grain from Shipman's facility in late April 1999. By reason of the debtors' removal of grain prior to expiration of the nine-month period, Shipman was obligated to the debtors for the unused portion of storage charges in the amount of $9,435.16. At the time of bankruptcy, the debtors owed Shipman in excess of $9,435.16 for goods and services purchased by them on open account.

The parties' agreement regarding storage of the debtors' grain was not reduced to writing. However, Shipman describes the storage arrangement as one which the debtors were free to terminate at any time, "whereupon Shipman would have . . . the obligation to refund the unused portion of the money." (Def.'s Reply, dated Aug. 16, 1999, at 2.) In addition, Shipman states that it "had an extant obligation to store the debtors' grain until prepayment was exhausted" and, further, that it was obligated to refund "a ratable portion of the storage prepayment in the event the debtors decided to sell their grain before the money ran out."[3] (Def.'s Brief, Aug. 4, 1999, at 3.)

■ Under § 542 of the Bankruptcy Code, an entity holding property of the estate, other than a custodian, must turn

---

**1.** Shipman has also filed a motion for relief from stay to exercise its setoff rights. This motion was taken under advisement along with the debtors' complaint for turnover.

**2.** As part of the storage arrangement, Shipman issued warehouse receipts to the debtors which showed ownership of the stored grain. These warehouse receipts were negotiated by the debtors and pledged to secure loans with the Commodity Credit Corporation.

**3.** In the absence of a written agreement, and in the absence of an express stipulation of facts concerning the terms of the parties' oral agreement, the Court has relied on the description of the storage arrangement contained in the parties' briefs. Shipman's characterization of the agreement set forth above is not controverted by the debtors and is accepted by the Court as establishing the terms and conditions of the parties' agreement.

**304**

over such property to the trustee or debtor in possession. *See* 11 U.S.C. § 542(a).[4] Similarly, a creditor who owes a debt that is property of the estate must pay such debt to the trustee, "except to the extent that such debt may be offset under [§ 553 of the Code] against a claim against the debtor." *See* 11 U.S.C. § 542(b).[5] Thus, a creditor in a § 542(b) action may offset or subtract an amount owed to it by the debtor and pay only the balance. *See Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990). This right of setoff derives from nonbankruptcy law and is preserved in the bankruptcy context "to avoid the potential injustice [of] requiring a creditor to prove his claim in full and [receive only] possible dividends [on it while, at the same time, being obligated to pay his full] indebtedness to the estate."[6] *See In re Brendern Enterprises, Inc.*, 12 B.R. 458, 459 (Bankr.E.D.Pa.1981).

In order to be entitled to setoff under § 553, a creditor must show that the obligations between the parties constitute mutual debts and that the debts arose prior to bankruptcy. *See In re L.P. Maun, M.D., Ltd.*, 92 B.R. 790, 795 (Bankr.S.D.Ill.1988) *aff'd as modified*, 105 B.R. 464 (S.D.Ill.1989). The requirement of "mutuality" means that the creditor owes a debt to the debtor who likewise is indebted to the creditor. In addition, for a debt and a claim to be "mutual," they must be owed in the same right and between the same parties standing in the same capacity. *See Maun*, 92 B.R. 790, 796. There is no mutuality, and, therefore, no right to

setoff, where the creditor does not "owe" the debtor. *Id.*

In the present case, both the debtors and Shipman appear to assume, without more, that Shipman's obligation to refund the debtors' unused storage fees constitutes a "debt" owing to the debtors. As a result, the parties' arguments are directed toward whether this "debt" arose prepetition so as to qualify for setoff under § 553 or whether it arose upon the postpetition sale of the debtors' grain and is, thus, ineligible for setoff against the debtors' prepetition indebtedness.

The Court, however, finds that the crucial issue is not when Shipman's obligation to the debtors arose but, rather, whether this obligation can be characterized as a "debt" subject to setoff. A setoff is applicable only where the debtor and creditor "owe" one another. It is inapplicable where the debtor's property is in the possession of the creditor as bailee or trustee. In such an instance, the property is "owned" by the bankruptcy estate, and the creditor's obligation as bailee or trustee cannot form the basis for a debt which the creditor may set off against his claim against the debtor. *See Maun*, 105 B.R. 464, 470; *Brendern*, 12 B.R. 458, 460.

Examination of the parties' agreement here reveals that Shipman's obligation regarding the debtors' funds corresponds to that of a trustee rather than a debtor/obligor. It is undisputed that at the beginning of the storage arrangement, the debtors made advance payments to

---

**4.** Section 542(a) provides that ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease ... shall deliver to the trustee, and account for, such property....

**5.** Section 542(b) states that "... an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset ... against a claim against the debtor."

**6.** Section 553 states, with exceptions not applicable here:

... [The Bankruptcy Code] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the [bankruptcy] case against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553.

Shipman for storage services that had not yet been performed. Shipman was to hold these funds and apply them to the debtors' account for storage charges as those charges accrued. In the event the debtors removed their grain from storage prior to the funds being exhausted, Shipman was to return the unused portion of the debtors' money. Shipman's obligation regarding the $9,435.16 at issue, therefore, is not to pay a debt owing to the debtors but to refund or "give back" property belonging to the debtors—property that is in Shipman's possession but to which no right has accrued.

Even though there is no express trust designating Shipman as trustee of the debtors' funds, under the facts of this case Shipman can be said to be holding the funds as a constructive trustee. Illinois law recognizes the imposition of a constructive trust whenever it is shown that a person in possession of property would be unjustly enriched if he were permitted to keep that property as his own. The remedy is available in circumstances where one has received property which, in equity and good conscience, he ought not to be allowed to retain. *See Suttles v. Vogel,* 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901, 904 (1988); *Chicago Park Dist. v. Kenroy, Inc.,* 107 Ill.App.3d 222, 63 Ill.Dec. 134, 437 N.E.2d 783, 785 (1982); *see also Maun,* 105 B.R. 464, 469.

The parties' agreement in this case establishes that the unused storage charges are the debtors' property, which Shipman has no right to retain following removal of the debtors' grain from storage. Shipman, therefore, holds the funds at issue as a constructive trustee. On this analysis, the Court finds that Shipman does not "owe" the debtors anything that could be used for offset against the debtors' open account indebtedness. No mutuality of debt exists because Shipman owes no "debt" but rather holds the debtors' funds in the capacity of a trustee. The unused storage charges belonging to the debtors thus constitute property of the estate and are subject to turnover in this action by the debtors.

SEE WRITTEN ORDER.