FREDERICK I. VOLINI, Plaintiff-Appellant, v. MARY DUBAS, Indiv., *et al.*, Defendants-Appellees.

Second District   No. 2—92—1052

Opinion filed May 11, 1993.—Rehearing denied June 17, 1993.

Chester A. Lizak and Andrew D. Werth, both of DiMonte & Lizak, of Park Ridge, for appellant.

William I. Caldwell, Jr., of Caldwell, Berner & Caldwell, of Woodstock, and Michael C. Poper and Stephen M. Haugh, both of Michael C. Poper, P.C., of Crystal Lake, for appellee State Bank of Woodstock.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of McHenry County in favor of defendants in an action arising out of the sale under the Uniform Commercial Code (Code or UCC) (Ill. Rev. Stat. 1991, ch. 26, par. 1—101 *et seq.*) of the beneficial interest in a land trust. Plaintiff, Frederick I. Volini, the sole beneficiary of the land trust, alleged that defendant, State Bank of Woodstock (Bank), the trustee of the land trust, breached its fiduciary duties to plaintiff, and that defendant Mary Dubas, n/k/a Mary Brown (Dubas), engaged in wrongful conduct which allowed her to unfairly purchase the beneficial interest.

This is plaintiff's second appeal. In the first appeal, we reversed the trial court's order dismissing count V of plaintiff's third amended

complaint against the Bank, because the trial court erred in finding, as a matter of law, that all fiduciary duties of a land trustee to its beneficiary had been eliminated. (See *Volini v. Dubas* (1989), 190 Ill. App. 3d 954, 959.) In the instant appeal, plaintiff challenges the trial court's directed judgment in favor of both defendants at the conclusion of plaintiff's case in the trial after remand.

The issues on appeal are whether the trial court erred in: (1) finding that the Bank did not breach its fiduciary duty to plaintiff; (2) finding in favor of Dubas; and (3) denying plaintiff leave to file an additional count to his amended fourth amended complaint.

Dubas filed a motion with this court to strike certain sections and statements in the statement of facts portion of plaintiff's appellate brief. We ordered both the motion and plaintiff's objections to it taken with the case. Dubas contends that plaintiff's brief contains statements which are clearly outside the record or otherwise unsubstantiated and therefore cannot be considered by this court. Dubas points to at least six specific statements or sections which she argues are outside the record and should be stricken. Plaintiff counters that every statement in his statement of facts is supported by the record.

■ We find that some of the statements in plaintiff's statement of facts are conclusory and/or are not supported by accurate references to the record. However, we also find that none of the purported statements outside the record are so flagrant as to hinder or preclude review. Accordingly, the striking of plaintiff's brief in whole or in part is unwarranted. (See *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 452.) The motion to strike is denied. We will disregard any inappropriate statements in reviewing this matter.

The relevant facts, as gleaned from the record, are as follows. On December 28, 1977, plaintiff entered into a trust agreement with the Bank. The trust agreement created a land trust with the Bank as trustee and with the corpus of the trust consisting of two parcels of real estate, commonly known as 307 and 325 West Jackson Street, Woodstock, Illinois. The trust agreement provided that the trustee would "deal with said property or proceeds therefrom only when authorized to do so in writing" by the beneficiary or beneficiaries "at the time." The trust agreement named plaintiff as the sole beneficiary of the trust.

On June 20, 1979, Dubas and her husband entered into an installment agreement with the Bank, as trustee of the land trust, for the purchase of one of the parcels of property in the trust (325 West Jackson) for $100,000. The Bank acted at the direction of plaintiff. Under the installment agreement, Dubas, who has succeeded to her hus-

band's interests pursuant to a divorce, was to receive a trustee's deed for the property upon payment of 50% of the principal balance. The agreement required Dubas, *inter alia,* to make monthly payments of $683.94 and to pay the real estate taxes on the property.

On September 15, 1979, plaintiff assigned his beneficial interest in the land trust to the First National Bank of Des Plaines (Des Plaines Bank) as collateral security for a loan. The assignment referred to the plaintiff as owner of 100% of the beneficial interest in the land trust and provided, in relevant part, that plaintiff, as assignor, assigned "all of the interest of the Assignor under the Trust Agreement and in the property described in the Trust Agreement *** including the right to manage, direct and control the property and the acts and doings of the Trustee in respect to such property."

After learning that plaintiff was in default on his obligations to the Des Plaines Bank, and on the advice of counsel, Dubas, who had made every monthly payment due to plaintiff under the installment agreement through March 1, 1982, stopped making payments to plaintiff. Dubas did not make any of the 22 payments due to plaintiff under the installment agreement in the period from April 1, 1982, through January 1, 1984. The sum total due for the 22 missed payments was $15,046.68. Dubas testified that for about six months in 1982 she made the installment contract payments into escrow accounts and then commingled the payments with other funds, but as of January 1984 had more than $15,000 put aside, including lines of credit, to cover the missed payments. Although she admitted that there had been discussions about the payments, Dubas testified that plaintiff did not make any formal demands for the missing payments. Dubas also testified that she was prepared to pay the amount owed if advised to by her attorney.

During the period when Dubas did not make monthly payments to plaintiff, Dubas also failed to pay the real estate taxes due on the 325 West Jackson property. By January 1984, Dubas owed a total of $4,460.71 in back real estate taxes for the 1981 and 1982 tax years.

Late in 1983 or early in 1984, Dubas learned that the Des Plaines Bank was going to sell the beneficial interest in the land trust at a UCC sale at the Bank because of plaintiff's default on his loan with the Des Plaines Bank. Dubas subsequently went to Wayne B. Brown (Brown), her husband's tax accountant, and asked Brown to represent her at the UCC sale because Dubas was scheduled to be in divorce court on the day of the sale.

On January 12, 1984, at the Bank, the Des Plaines Bank conducted a UCC sale of the beneficial interest in the land trust. The Des

Plaines Bank had sent notice of the sale by certified mail to plaintiff and Dubas. Plaintiff did not attend the sale. Brown, who was a director of the Bank and a member of the Bank's loan committee, attended the sale as a representative for Dubas. Also in attendance, as a witness, was Donald Cooney (Cooney), the Bank's president and chairman of the board. This was the only time in his 41 years at the Bank that Cooney was called as a witness to a UCC sale. The Des Plaines Bank made an initial bid of $25,273.29, the amount it was owed by plaintiff. Brown then made a bid of $25,274. The seller, hearing no other bids, accepted Brown's bid as agent for Dubas.

Immediately after the sale, Brown talked with Cooney about a loan for Dubas. Dubas was in need of a loan to cover the amount she had bid through Brown at the sale. In order for the sale to be finalized, Dubas had to deliver the amount she bid at the sale to the Des Plaines Bank within 48 hours. Cooney, who had never met Dubas, testified that he "authorized an immediate commercial loan to pay the Des Plaines bank in order to get title cleared to cover [the Bank's] mortgage which we hadn't even drawn yet. That commercial loan was subsequently paid out of mortgage proceeds." Cooney further testified that he authorized the loan because Brown had requested it and because Cooney's appraisal of the trust properties, made the same day, justified the loan as good banking practice. Cooney appraised the 307 West Jackson property at $52,000 and the 325 West Jackson property at $90,000.

Dubas had not made any arrangements with the Bank for a loan prior to January 12, 1984. On January 12, 1984, after learning that she was the successful bidder at the UCC sale, Dubas went to Brown's office and completed an application for a loan from the Bank. Later the same day, Dubas went to the Bank and gave the application to the person at the information desk.

On January 13, 1984, Dubas returned to the Bank and met Cooney, who presented her with a package of loan documents, some of which Dubas signed, for a mortgage line of credit of up to $100,000. The bank backdated all of the documents in the loan package to comply with Dubas' right of rescission. One of the documents which Dubas signed on January 13, 1984, was a directional order directing the bank, as trustee of the land trust, to execute a principal note and trust deed. The directional order was backdated to January 10, 1984. Included among the other backdated loan package documents, all of which were actually executed on January 12 or 13, 1984, were: a loan application dated January 6, 1984; a loan commitment letter from the Bank to Dubas dated January 10, 1984; and a trust

deed and note executed by the Bank as trustee of the land trust each dated January 10, 1984.

On the same day that Dubas signed the loan documents, January 13, 1984, after the mortgage was complete, the Bank made an advance to Dubas on her line of credit from the mortgage and wired $25,274 to the Des Plaines Bank for Dubas as her payment for the beneficial interest in the land trust which she purchased at the UCC sale. On January 16, 1984, the Bank advanced $31,673.91 to Dubas on her line of credit from the mortgage and issued a check in that amount to the first mortgagee, the estate of Steig. On January 26, 1984, the Bank advanced $4,460.71 to Dubas on her line of credit from the mortgage and issued a check in that amount to the McHenry County clerk for the amount Dubas owed for 1981 and 1982 real estate taxes on the 325 West Jackson property.

On January 24, 1984, the Bank acknowledged the transfer of the beneficial interest in the land trust from the Des Plaines Bank to Dubas. The transfer gave Dubas, as assignee, the power of direction for the land trust.

Plaintiff did not authorize any of the transactions which occurred on January 12 or 13, 1984, relating to the land trust. Plaintiff claims that Dubas owes him $161,732.93 as of May 12, 1992, based on the outstanding balance Dubas owed plaintiff on January 12, 1984, plaintiff's equity in the property owned by the land trust, and 9% interest under the terms of the installment agreement.

After plaintiff rested his case, the trial court granted the motions of both defendants for a directed finding and entered judgment in favor of both defendants. The trial court also denied plaintiff's subsequent motions for reconsideration and for leave to file count V to his amended fourth amended complaint. Plaintiff appeals from the trial court judgments and the denial of his motion to file count V.

Before addressing the specific issues raised on appeal, we note the general standards of review applicable to this case. Our supreme court recently set out the standards as follows:

" 'Although a trial court's decision is always subject to review, a reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. [Citations.] The trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. [Citations.] Consequently, where the testimony is conflict-

ing in a bench trial, the court's findings will not be disturbed unless they are against the manifest weight of the evidence.' " (*Flynn v. Cohn* (1992), 154 Ill. 2d 160, 166-67, quoting *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549.)

With these principles in mind, we turn to the substantive issues raised in this case.

The first issue on appeal is whether the Bank breached its fiduciary duties to plaintiff as trustee of the land trust. Plaintiff contends that the Bank breached its fiduciary duties when the Bank followed the January 13, 1984, directional order of Dubas, to execute a note and trust deed pursuant to Dubas' loan application on the same date. Plaintiff asserts that, as a fiduciary, the Bank owed him the duties of complete loyalty and the exclusion of all self-interest. Plaintiff argues that the Bank breached these duties when it issued the note and trust deed because these acts were in the best interests of Brown rather than in plaintiff's best interest.

The trial court found that plaintiff failed to introduce sufficient evidence to support his allegation of breach of fiduciary duty by the Bank. We agree.

■ In its first consideration of the subject, our supreme court held that a trustee of a land trust owes the beneficiaries of the trust the same fiduciary duties as any other trustee. (*Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, 239.) Although subsequent legislation determined that it was not a breach of fiduciary duties for a land trustee to act as a creditor to its beneficiary, this legislation did not eliminate all the fiduciary duties of a land trustee. (*Volini v. Dubas* (1989), 190 Ill. App. 3d 954, 959.) Thus, a land trustee continues to owe its beneficiaries the fiduciary duty of other trustees, except insofar as they relate to the specific circumstances addressed by the legislature. (*Volini*, 190 Ill. App. 3d at 959.) Accordingly, with the above exceptions, a land trustee owes the beneficiaries of a land trust the duty of complete loyalty, excluding all self-interest, and prohibiting the land trustee from dealing with the trust property for its individual benefit. See *Zarkin*, 89 Ill. 2d at 239.

■ Count II of plaintiff's amended fourth amended complaint alleging breach of fiduciary duties by the Bank essentially relied on factual allegations which plaintiff did not prove at the trial. Specifically, the complaint alleged that the backdated documents executed on January 12 or 13, 1984, had been executed on the backdated dates. Because these dates were prior to the date of the UCC sale, plaintiff asserted that this showed a conspiracy between the Bank and Dubas. At

trial, however, plaintiff himself proved that the documents were actually executed after the UCC sale and that Dubas had not approached the Bank for a loan until after the UCC sale, thus knocking out the underpinnings of his conspiracy theory.

Plaintiff's allegations of breach of fiduciary duty on appeal focus on the Bank's conduct in following the directional order written by Dubas on January 13, 1984. Plaintiff argues that the trust agreement specified that an assignment of the beneficial interest was not effective until accepted by the trustee and that because the Bank did not acknowledge the transfer of the beneficial interest in favor of Dubas until January 24, 1984, Dubas' use of the power of direction prior to January 24 was fraudulent and the Bank, as trustee, and with full knowledge that Dubas had not yet received the beneficial interest, breached its fiduciary duties to plaintiff by knowingly following a fraudulent directional order.

Plaintiff's position is unpersuasive for the following reasons. First, the language in the trust agreement pertains to assignments of the beneficial interest. However, Dubas did not acquire the beneficial interest by assignment; rather, she purchased the beneficial interest at a UCC sale. Thus the trust agreement language cited by plaintiff does not apply to these circumstances. Second, even if the cited language did apply to the purchase of the beneficial interest, the language only says that "no assignment of any beneficial interest *shall be binding* on the trustee" (emphasis added) until the assignment is accepted by the Bank. Thus, strictly construed, the language does not prevent the Bank from acting prior to formal acknowledgment of the transfer; it only provides that the Bank does not have to act until acknowledgment. Third, plaintiff's argument ignores the fact that at the time of the alleged breach of fiduciary duty plaintiff had defaulted on the loan for which he assigned his beneficial interest as collateral. Thus, the Des Plaines Bank had all the rights pertaining to the beneficial interest pursuant to plaintiff's assignment which had been acknowledged by the Bank so that the transfer of the beneficial interest in question was not from plaintiff, as he implied, but from the Des Plaines Bank. Finally, and most important, Dubas, as purchaser of the beneficial interest at a UCC sale, was entitled to exercise the power of direction immediately upon purchase of the beneficial interest. (See Ill. Ann. Stat., ch. 26, par. 9—504(4), Uniform Commercial Code Comment, at 344 (Smith-Hurd 1974); *Kortenhof v. Messick* (1974), 18 Ill. App. 3d 1, 8.) Here, the Bank, as a witness to the sale in the person of Cooney, its president and chief executive officer, had no reason to doubt that Dubas had purchased the beneficial interest and therefore

had no reason to wait until the formal transfer of the beneficial interest from the Des Plaines Bank. Thus, the Bank did not act in its own self-interest as plaintiff contends; rather, it properly followed the directional order of the beneficial interest holder at the time, Dubas.

Plaintiff also failed to prove his contention that the Bank breached its fiduciary duties because the UCC sale was commercially unreasonable. This matter will be more fully addressed below.

For all the above reasons, we conclude that the trial court's finding that plaintiff failed to prove its allegation of breach of fiduciary duties by the Bank was not against the manifest weight of the evidence. Accordingly, we find that the trial court did not err when it entered judgment on this matter in favor of the Bank.

The next issue before us is whether the trial court erred in directing a finding in favor of Dubas. The trial court concluded that plaintiff failed to introduce sufficient evidence to support the allegations of his claims against Dubas and entered judgment in favor of Dubas. In his amended fourth amended complaint, plaintiff claimed, *inter alia*, that after Dubas failed to make her payments to plaintiff under the installment contract, plaintiff, in reliance upon Dubas' representations that she would escrow the payments, did not pursue remedies available to him against Dubas for her default and was lulled into a false sense of security concerning the reinstatement of the installment agreement to provide plaintiff with funds to cure his own default. Plaintiff also claimed that Dubas, aided and abetted by the Bank, as shown by loan documents and other documents dated before the UCC sale, fraudulently purchased plaintiff's beneficial interest in the land trust. Finally, plaintiff claimed that the UCC sale was not commercially reasonable.

The trial court found that plaintiff failed to prove these claims. The court stated that plaintiff failed to provide "any evidence as to reliance by Volini, as to a commercially unreasonable sale and nothing to contradict the evidence that loan was after the sale." We agree.

■ A careful reading of the record shows that plaintiff did not prove his claimed reliance on a purported agreement by Dubas to cure her default on the installment contract payment. At trial, Dubas gave uncontradicted testimony that plaintiff did not make a demand for the overdue payments and denied there was any agreement whereby Dubas would make the payments. In addition, Dubas testified that she had the financial ability to make the payments and, upon her attorney's advice, stood ready to do so if plaintiff cured his default. Based on this evidence, we cannot say that the trial court erred in conclud-

ing that plaintiff failed to prove reliance on a purported agreement by Dubas to make the payments.

The record also shows that plaintiff did not prove his conspiracy claims. As in his claim against the Bank, plaintiff premised his claim against Dubas on allegations that the Bank and Dubas conspired to defraud plaintiff by executing loan documents prior to the date of the UCC sale. As seen above, plaintiff actually proved that Dubas executed all of the documents in question after the UCC sale and did not seek a loan from the Bank until after the UCC sale. The record shows that several of the documents were backdated, thus accounting for the presale dates. While backdating such documents may raise questions, we cannot say that the trial court erred in concluding that plaintiff failed to prove that the loan had been arranged prior to the UCC sale.

Plaintiff's complaint also alleged that the UCC sale was commercially unreasonable. To support his allegation, plaintiff reiterated his claim of fraud and conspiracy between Dubas and the Bank and cited the documents allegedly executed before the sale. As seen above, plaintiff failed to prove these claims. Plaintiff's complaint also alleged that the UCC sale was commercially unreasonable because the price paid for the beneficial interest was inadequate.

■ Article 9 of the Uniform Commercial Code governs the foreclosure of security interests, including beneficial interests in trusts. (Ill. Rev. Stat. 1991, ch. 26, par. 9—302(1)(c).) In the case of defaults, the Code provides that a secured party may sell the collateral securing the debt in order to satisfy the indebtedness. (Ill. Rev. Stat. 1991, ch. 26, par. 9—504(1)(b).) However, the Code cautions that "every aspect of the disposition including the method, manner, time, place and *terms* must be commercially reasonable." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 26, par. 9—504(3).

■ While price is the key component in assessing commercial reasonableness, price alone does not establish commercial reasonableness. (*Standard Bank & Trust Co. v. Callaghan* (1988), 177 Ill. App. 3d 973, 977.) It is well established that property does not bring its full value at forced sales. (*Horney v. Hayes* (1957), 11 Ill. 2d 178, 185.) This principle is reflected by the Code itself, which provides:

> "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." (Ill. Rev. Stat. 1991, ch. 26, par. 9—507(2).)

Accordingly, it has consistently been held that mere inadequacy of price in the absence of fraud or mistaken or illegal practice will not vitiate a sale. *Callaghan*, 177 Ill. App. 3d at 977.

Here, plaintiff alleges that Dubas' fraud played a role in the sale. However, as we have seen above, plaintiff failed to prove any fraud by either Dubas or the Bank. The record shows that the Des Plaines Bank conducted the sale of the land trust beneficial interest after plaintiff defaulted on the loan secured by the beneficial interest. Plaintiff did not attend the sale. At the sale, Dubas' representative was the only bidder besides the Des Plaines Bank. Only after the sale did Dubas seek a loan from the Bank to cover the cost of her purchase. As the new owner of the beneficial interest, Dubas directed the Bank to execute a note and trust deed as part of the loan process. Because time was of the essence, in order to satisfy rescission rights, the Bank backdated the documents signed after the sale. Plaintiff did not prove fraud here and therefore could not prove that the sale was commercially unreasonable based solely on the price of the sale.

For all these reasons, we find that the trial court's conclusion that plaintiff failed to prove his case was not against the manifest weight of the evidence. Accordingly, the trial court did not err when it found that plaintiff failed to prove his case and directed judgment in favor of Dubas.

■ On appeal, plaintiff contends that the trial court erred in its judgment in favor of Dubas for reasons of equity. First, plaintiff makes a general argument that it would be inequitable for Dubas to avoid her obligations under the installment agreement by purchasing plaintiff's beneficial interest in the land trust. Plaintiff argues that such a purchase would be particularly egregious in view of Dubas' conduct in defaulting on the payments and the taxes and wrongfully directing the Bank to execute the note and trust deed without having the power of direction. As we have seen previously, plaintiff did not prove that Dubas wrongfully exercised the power of direction because, as a purchaser of the beneficial interest, Dubas had the power of direction which went with the beneficial interest. See *Kortenhof v. Messick* (1974), 18 Ill. App. 3d 1, 8.

Plaintiff's arguments with respect to the missed payments under the installment agreement are also unavailing. Plaintiff's complaint is fundamentally to secure monetary damages, and therefore equity will not entertain such a complaint. (*Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579, 584.) Plaintiff had adequate remedies at law to recover for the missed payments, but the record shows that plaintiff chose not to pursue those remedies. Equitable re-

lief is not available where there is an adequate remedy at law. (*La Salle National Bank v. Refrigerated Transport Co.* (1987), 165 Ill. App. 3d 899, 900.) For these reasons, plaintiff's argument for general equitable relief fails.

Plaintiff next contends that Dubas was unjustly enriched. Plaintiff again argues that Dubas participated in fraud by executing the power of direction and therefore a constructive trust should be imposed on the amount Dubas was unjustly enriched when she purchased $142,000 worth of real estate for $57,000.

A constructive trust is one raised by operation of law and imposed by a court exercising its equitable powers where the legal title to money or property was obtained by a person in violation of some duty owing to him who is equitably entitled to the money or property. (*Compton v. Compton* (1953), 414 Ill. 149, 156-57.) A constructive trust may be used to compel a party who unfairly holds a property interest or money to convey that property or money to the one to whom it justly belongs where the person holding the property or money would be unjustly enriched if he were permitted to retain the property or money. *A.T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 660.

A constructive trust is generally imposed in two situations: where actual or constructive fraud is considered as equitable grounds for raising the trust or where there is a breach of fiduciary duties. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193.) Moreover, a constructive trust may arise when duress, coercion or mistake is present, but some form of wrongdoing is a prerequisite to the imposition of a constructive trust. (*Suttles,* 126 Ill. 2d at 193.) A constructive trust will not be imposed unless specific instances of wrongdoing are shown, and the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to only one conclusion. (*Suttles,* 126 Ill. 2d at 194.) A constructive trust is an equitable remedy and therefore will not be imposed where there is an adequate remedy at law. *Hagshenas v. Gaylord* (1990), 199 Ill. App. 3d 60, 78.

■ Here, a constructive trust is unwarranted because plaintiff failed to prove wrongful conduct by Dubas. As seen above, plaintiff failed to prove his allegation that Dubas wrongfully exercised the power of direction with respect to the land trust. Neither has plaintiff proven fraud or any other wrongful conduct by Dubas. Dubas' nonpayment of the installment payments did not constitute wrongful conduct and, in any event, could not serve as the basis for a constructive trust because plaintiff had adequate remedies at law with respect to the missed payments. For these reasons, we find that plaintiff's con-

structive trust and unjust enrichment arguments do not support a conclusion that the trial court erred in directing judgment for Dubas.

Plaintiff's next contention on appeal is that the UCC sale should be set aside because the price paid at the sale was so low that it should shock the conscience of the court. Plaintiff argues that Illinois courts have consistently held that a sale may be set aside if the disparity between the value of the property sold and the amount bid at a sale was so great as to shock the conscience of the court. Plaintiff asserts that Dubas paid about 40% of the value of the property in the land trust. He arrives at this figure by adding the amount paid by Dubas at the UCC sale for the beneficial interest ($25,274) to the amount Dubas paid the first mortgagee ($31,673.94) and comparing this total to the estimated value of the properties on the day of the sale ($142,000), as established by Cooney's appraisal of the properties.

However, plaintiff admits that mere inadequacy of price in the absence of fraud will not vitiate a sale and therefore also asserts that Dubas acted fraudulently because she "was aware of the defects of the sale and of the unfairness of the circumstances of her purchase." To support this assertion plaintiff again cites Dubas' alleged improper exercise of the power of direction.

■ We find plaintiff's arguments unpersuasive for the following reasons: (1) plaintiff's calculation of the 40% figure fails to take into account Dubas' substantial equity in the property which, when included in plaintiff's figures, increases the percentage Dubas paid; (2) even accepting the 40% figure, *arguendo*, plaintiff failed to show that this figure is sufficient to shock the conscience of the court because the cases he cites in support of his argument all involve significantly smaller percentages paid; and (3) all the cases cited by plaintiff involved fraud or overreaching by a party to the sale which the courts took into account in reaching their decisions, and, again, plaintiff has failed to prove fraud or overreaching in this case. Accordingly, plaintiff's contention that the price Dubas paid was so low that it should shock the conscience of the court does not support a finding that the trial court erred in directing a judgment in favor of Dubas.

Plaintiff's final equity-based contention on appeal is that the principle that equity abhors a forfeiture should operate here to set aside Dubas' purchase of the beneficial interest in the land trust at the UCC sale. Plaintiff contends that the UCC sale effectively forfeited his equity interest in the trust property and that this should not be allowed because Dubas' failure to make her payments under the installment contract and other "wrongful conduct" in executing a directional order caused the forfeiture. We disagree.

●■ Again, as shown above, plaintiff failed to prove wrongful conduct by Dubas. Moreover, the record does not support plaintiff's contention that Dubas' cessation of installment payments caused plaintiff to forfeit his equity interest in the trust property. The record shows that plaintiff was already in default when Dubas stopped making her installment payments and that plaintiff did not make formal demands for the payments or take any of the other possible actions he could have to recover the payments. Under these circumstances we cannot say that Dubas' conduct caused plaintiff's alleged forfeiture. For these reasons, we find that plaintiff's forfeiture theory does not support a conclusion that the trial court erred in directing judgment for Dubas.

Based on the foregoing, we find that the trial court did not err in directing judgment for Dubas.

Plaintiff's final issue on appeal is whether the trial court erred when it denied plaintiff leave to add count V to the amendment to his fourth amended complaint because count V conformed to the evidence at trial. The proposed count V was an action at law against Dubas for compensatory damages for the 22 payments Dubas did not make to plaintiff under the installment contract plus interest at the installment contract rate of 9%. The complaint charged that $11,285.01 in interest "accrued on the principal balance" through May 1, 1992, was due and owing and also sought $3.71 per day in additional interest until entry of judgment.

Plaintiff contends that under section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 1—101 *et seq.*) parties may file amendments to pleadings at any time before final judgment. (Ill. Rev. Stat. 1991, ch. 110, par. 2—616.) Plaintiff recognizes that the allowance of an amendment to a pleading rests within the discretion of the trial court, but argues that Illinois courts have liberally and broadly construed section 2—616 to carry out its purpose of permitting amendments to the pleadings so that cases are decided on their merits and not on procedural technicalities.

Plaintiff maintains that the allegations in his proposed count V conformed to the proofs at trial and that the trial court's denial of plaintiff's motion for the amendment did not further the ends of justice. Plaintiff argues that he had met the test used to determine whether a trial court abused its discretion in denying the amendment.

A trial court has broad discretion in motions to amend pleadings, and a reviewing court should not find that denial of a motion to amend is prejudicial error unless there has been a manifest abuse of such discretion. (*Loyola Academy v. S & S Roof Maintenance, Inc.*

(1992), 146 Ill. 2d 263, 273-74.) In considering whether a trial court abused its discretion, a reviewing court should generally consider "(1) whether the proposed amendment would cure the defects in the original pleading; (2) whether the amendment would prejudice or surprise other parties; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading can be identified." *People ex rel. Hartigan v. E & E Hauling, Inc.* (1992), 153 Ill. 2d 473, 505.

●■ With regard to the first factor, we find that the amendment could cure the defective pleading. Plaintiff's amended fourth amended complaint does not contain an action at law for recovery of the missed installment payments. The evidence adduced at trial tended to support such an action.

The next factor is whether the proposed amendment would prejudice or surprise the other parties. We find that the proposed amendment would surprise and prejudice Dubas, the party against whom the amendment is directed. The evidence showed that Dubas never denied that she missed the payments and that she testified she was able to make the payments if plaintiff cured his default or made a formal demand for the payments. Plaintiff never made a formal demand for the missed payments and did not initiate an action at law for the payments until more than 10 years after the first missed payment and after a trial in which plaintiff did not assert an action at law for recovery of the payments. Under these circumstances, when plaintiff, with full knowledge of the evidence, had so many opportunities to bring an action at law to recover damages for the missed payments, but did not do so, we find that such an action now would prejudicially surprise Dubas.

The third factor is the timeliness of the proposed amendment. We find that plaintiff did not timely file the proposed amendment. Plaintiff filed his motion to amend his complaint 27 days after the trial court order entering judgment in defendants' favor. Defendants had no prior notice of plaintiff's intention to propose an amendment to his complaint. Most importantly, plaintiff filed his intent to amend well after the pleading stage. (See *Loyola Academy*, 146 Ill. 2d at 275.) For all these reasons, we find that plaintiff filed his motion seeking to amend his pleadings after an unreasonable length of time.

The last factor is whether previous opportunities to amend could be identified. The record indicates that plaintiff sought to amend an amendment to his fourth amended complaint. This shows that plaintiff had at least five prior opportunities to plead the proposed action.

Therefore, we find that plaintiff had ample previous opportunities to amend his pleadings as proposed but did not do so.

The test to determine whether the trial court abused its discretion does not favor plaintiff. Accordingly, we find that the trial court did not abuse its discretion in denying plaintiff's motion to file count V to the amended fourth amended complaint.

Based on the foregoing, the judgments of the circuit court of McHenry County are affirmed.

Affirmed.

WOODWARD and QUETSCH, JJ., concur.